IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SALT LAKE CITY CORPORATION;<br><br>Plaintiff;<br><br>v.<br><br>SEKISUI SPR AMERICAS, LLC; SEKISUI RIB LOC AUSTRALIA PTY LTD.; SOUTHWEST PIPELINE AND TRENCHLESS CORP.; SAFECO INSURANCE COMPANY OF AMERICA, INC.; HYDRATECH ENGINEERED PRODUCTS, LLC; and DOES 1–10;<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**<br><br>Case No. 2:17-cv-01095-JNP-BCW<br><br>District Judge Jill N. Parrish |

Before the court are motions to dismiss filed by defendant Sekisui SPR Americas, LLC (Sekisui Americas), [Docket 28]; defendant Sekisui Rib Loc Australia Pty Ltd. (Sekisui Australia), [Docket 29]; and defendant HydraTech Engineered Products, LLC, [Docket 35]. Two of the defendants—Sekisui Australia and HydraTech—moved to dismiss for lack of personal jurisdiction. The court concludes that plaintiff Salt Lake City Corporation has made a prima facie showing that Sekisui Australia and HydraTech are subject to personal jurisdiction in Utah and DENIES both motions to the extent that they seek dismissal for lack of jurisdiction.

Three of the defendants—Sekisui Americas, Sekisui Australia, and HydraTech—moved to dismiss on statute of limitations grounds. The court GRANTS all three motions to the extent that they seek dismissal under the applicable statutes of limitations.

# BACKGROUND[1]

Salt Lake City requested bids to rehabilitate a sewer line by installing a liner within the existing sewer pipe. This "trenchless" method of rehabilitating the sewer line avoids the need to dig up and replace the line.

Southwest Pipeline and Trenchless Corporation won the bid. Either Sekisui Americas or Sekisui Australia[2] sold its proprietary liner product to Southwest for use in the project. HydraTech supplied joints that were used to connect and seal the sections of pipe liner used in the project.

Sometime in late 2012, Southwest finished the sewer line rehabilitation project. On December 17, 2012, Salt Lake City sent a letter to Southwest. The letter stated that on November 29, 2012, the city had tested the rehabilitated section of sewer line and had discovered "a significant defect and leak in the liner." The letter stated that the defect was "allowing 1.0 to 1.5 million gallons per day . . . groundwater infiltration with extremely high total dissolved solids . . . into the pipeline." The letter demanded that Southwest "correct the defective work" by February 28, 2013. On October 1, 2015, the city formally notified Southwest and either Sekisui Americas or Sekisui Australia of a claim for breach of warranty.

---

[1] In this section, the court recites the well-pled allegations of the complaint. In Part I.A of this memorandum decision, the court considers additional jurisdictional facts related to Sekisui Australia and HydraTech's Rule 12(b)(2) argument.

[2] In its Amended Complaint, Salt Lake City made the unadvisable choice to refer to Sekisui Americas and Sekisui Australia collectively as "Sekisui." Thus, it is impossible to tell whether the allegations in the complaint regarding "Sekisui" refer to Sekisui Americas, Sekisui Australia, or both. For the purposes of evaluating Sekisui Australia's personal jurisdiction argument, the court considers an affidavit and associated documents provided by Salt Lake City that differentiate, to some extent, the roles played by Sekisui Americas and Sekisui Australia in supplying the liner for the sewer line rehabilitation project.

On May 10, 2017, Salt Lake City sued Southwest, Sekisui Americas, Sekisui Australia, and HydraTech. The operative complaint asserts claims for (1) breach of warranty, (2) products liability, (3) negligence, and (4) negligent failure to warn against Sekisui Americas, Sekisui Australia, and HydraTech.

## ANALYSIS

Sekisui Australia and HydraTech move to dismiss the claims against them under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim. Sekisui Americas moves to dismiss only for a failure to state a claim under Rule 12(b)(6). Under Tenth Circuit precedent, courts must resolve challenges to personal jurisdiction before addressing arguments related to the merits of the case. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998). Thus, the court first addresses Sekisui Australia and HydraTech's personal jurisdiction arguments. The court then resolves the statute of limitations arguments asserted under Rule 12(b)(6).

I.      **PERSONAL JURISDICTION**

        *A.  Facts Relevant to Personal Jurisdiction*

As the plaintiff, Salt Lake City bears the burden of establishing personal jurisdiction. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). When the issue of personal jurisdiction "is raised early on in litigation, based on pleadings (with attachments) and affidavits, that burden can be met by a *prima facie* showing." *Id.*

Salt Lake City proffers the affidavit of the president of Southwest, Justin Duchaineau, in support of its *prima facie* showing that this court has personal jurisdiction over the defendants. Sekisui Australia and HydraTech also present affidavits in support of their contentions that they are not subject to personal jurisdiction in Utah. Some of the affidavits presented by the

3

defendants—in particular, the affidavit of the acting managing director of Sekisui Australia, Gloria Porcelli—aver facts that conflict with the factual assertions made by the affidavit proffered by Salt Lake City. For the purposes of determining whether Salt Lake City has made its *prima facie* showing of jurisdiction, the court must "resolve any factual disputes in the plaintiff's favor." *Id.* Resolving all disputes in favor of Salt Lake City, the affidavits support the following additional facts that are relevant to the question of personal jurisdiction.[3]

Around November 2008, Southwest entered into a distributorship agreement with Sekisui Australia, an Australian company that manufactures liners used to refurbish underground pipes. Sometime in 2009, either Sekisui Australia or its American affiliate, NordiTube Technologies, Inc., informed Southwest that Salt Lake City had requested bids to refurbish a sewer line. Sekisui Australia asked Southwest to submit a bid for the project using its liners. In support of the bid, Sekisui Australia created design calculations tailored to the Salt Lake City project that were then submitted to the city. The Southwest bid was accepted by Salt Lake City. Sekisui Australia subsequently manufactured pipe liner sections that were specifically designed for the Salt Lake City project. The chain of custody of the liner is not fully laid out in the affidavits, but the liner sections were eventually purchased from Sekisui Americas.

Sekisui Australia, however, continued to be involved in the Salt Lake City project. While Southwest was installing the liner, two employees of Sekisui Australia—Andreas Vetter and an unnamed individual—were regularly on the jobsite to train Southwest employees and approve the

---

[3] The court considers the additional facts averred in the affidavits only for the purpose of resolving the issue of personal jurisdiction. The court, of course, is confined to the allegations of the complaint for the purpose of resolving the defendants' 12(b)(6) arguments.

installation work.[4] Sekisui Australia also sent a letter to Southwest that approved of Southwest's proposal to use seals manufactured by HydraTech to create a watertight seal between the liner sections. The approval letter specifically referenced the Salt Lake City project.

In July 2011, HydraTech, a company located in Ohio, received an order for a number of its joint seals. HydraTech shipped the seals to Southwest in Salt Lake City. HydraTech also sent one of its employees to Salt Lake City for two days to provide on-site installation training.

B. Legal Standard

To determine whether it has personal jurisdiction over Sekisui Australia and HydraTech, the court first looks to whether exercising personal jurisdiction satisfies Utah's long-arm statute, and second, whether exercising personal jurisdiction comports with principles of constitutional

---

[4] Sekisui Australia objects to the portion of the Duchaineau affidavit where he declares that Andreas Vetter was an employee of Sekisui Australia at the time that he was visiting the Salt Lake City project site. Sekisui Australia points to its own affidavit, which declares that Vetter was an employee of its American affiliate, NordiTube Technologies, during the period of time when he was visiting the jobsite. It then argues in a conclusory manner that "[a]ccordingly, Mr. Duchaineau's Declaration should be stricken on this point under Federal Rule of Evidence 602 for lack of personal knowledge."

The court overrules the objection. Pointing to contradictory evidence, by itself, does not address whether Duchaineau's assertion regarding Vetter's employment status was based upon personal knowledge. An affiant's personal knowledge may be "reasonably inferred from [his or her] position[] and the nature of [his or her] participation in the matters [addressed in the affidavit]." *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990); *see also Pipkin v. Mortg. Creditcorp, Inc.*, No. 94-6443, 1995 WL 747437, at *4 n.5 (10th Cir. 1995) (unpublished) (inferring that the affidavits of bank officers were based upon personal knowledge because of their respective positions). In this case, Duchaineau specifically averred that the factual assertions of his affidavit were based upon personal knowledge. Given that he was the president of Southwest, which worked closely with both Sekisui Australia and Vetter on the Salt Lake City Project, the court has no reason to doubt Duchaineau's assertion of personal knowledge. Indeed, Sekisui Australia has not articulated an argument that the facts averred in Duchaineau's affidavit were not based upon personal knowledge. It argues only that some of the asserted facts are wrong. This is not enough to successfully challenge personal knowledge under Rule 602.

due process. *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999). Utah's long-arm statute "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." UTAH CODE § 78B-3-201(3). Therefore, the court need only address whether the exercise of personal jurisdiction over the defendants comports with due process demands.

"The Supreme Court has held that, to exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A defendant's contacts with the forum state may give rise to either general or specific personal jurisdiction. In this case, Salt Lake City argues that Sekisui Australia and HydraTech are subject to both general and specific personal jurisdiction. The court first addresses the city's specific jurisdiction argument.

Specific jurisdiction is a two-step inquiry. The court must consider "(a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985)).

1) Minimum Contacts

First, the court must consider whether a defendant has sufficient contacts with the forum state. A defendant's contacts with the forum state are sufficient when two requirements are met:

(1) "the defendant purposefully directed its activities at residents of the forum," and (2) "the plaintiff's claim arises out of or results from the actions by the defendant himself that create a substantial connection with the forum state." *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005) (citation omitted). Here, both requirements are satisfied.

i. Purposeful Direction

The purposeful direction requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Burger King*, 471 U.S. at 475 (citations omitted). Instead, jurisdiction is proper "where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Id.* (citation omitted). Consequently,

> where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id.* at 475–76.

a) Sekisui Australia

Because Sekisui Australia delivered its liner sections to a third-party distributer, which then sold the product for use in the Salt Lake City project, the court must conduct a stream-of-commerce analysis to determine if Sekisui Australia purposefully directed its activities toward Utah.

In *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011), the U.S. Supreme Court addressed the conditions under which placing goods into the stream of commerce can subject the manufacturer to specific personal jurisdiction in the state where the goods end up. But the Court did not agree on a majority opinion. "When a fragmented Court decides a case and no single

rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'" *Marks v. United States*, 430 U.S. 188, 193 (1977) (alteration in original) (citation omitted).

The opinion with the narrowest holding in *McIntyre* was the concurring opinion of Justice Breyer, which "adhere[d] strictly" to the Court's prior precedents. *McIntyre*, 564 U.S. at 893. The Breyer concurrence affirmed that a manufacturer may be subject to personal jurisdiction in a state if it "delivered its goods in the stream of commerce 'with the expectation that they will be purchased'" by end-users in that state. *Id.* at 889 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)). The concurrence concluded, however, that a mere expectation that a good will arrive in a particular state by way of a third-party distributor is not sufficient to establish personal jurisdiction. Courts must also consider (1) whether there was a "'regular . . . flow' or 'regular course' of sales" in the forum state and (2) whether there was evidence that the manufacturer had done "something more" to direct its product to the forum state, "such as special state-related design, advertising, advice, [or] marketing." *Id.* (citations omitted). Under the facts of *McIntyre*, a foreign manufacturer that sold its product in the United States through a third-party distributor did not have sufficient contacts with the state of New Jersey to establish personal jurisdiction where only one item was sold in the state and where there was no indication that the manufacturer had done something more to direct its product to the state. *Id.* at 888–89.

In this case, Sekisui Australia placed its liners in the stream of commerce and they were eventually sold by Sekisui Americas for delivery and installation in Utah. Similar to the facts of *McIntyre*, Salt Lake City has not produced evidence of a course of sales in the state. The only

evidence before the court is of a single sale to the city. But unlike in *McIntyre*, where there was no evidence that the manufacturer had done anything to direct its product to the forum state, Salt Lake City has made a strong showing that Sekisui Americas specifically targeted it product toward Utah. It encouraged Southwest to bid for the Salt Lake City project using its liner. Sekisui Australia then created design calculations for the Salt Lake City project to support the bid and manufactured liner sections that were specifically designed for the project. Two Sekisui Australia employees visited the Salt Lake City project site to ensure that the liner sections were installed correctly. Finally, it authorized the use of HydraTech seals for the project.

Salt Lake City, therefore, has proffered strong evidence that Sekisui Australia specifically directed its product to Utah through "special state-related design, . . . advice, [and] marketing." *Id*. at 889. This evidence demonstrates that the liners did not arrive in Utah by happenstance or by way of choices made by third parties. Sekisui Australia identified the Salt Lake City project, aided a contractor's bid so that its liners would be purchased for the project, and manufactured liner sections specifically for use in the project. Even after the liner sections arrived in this state, Sekisui Australia continued to be involved in the installation process by inspecting the workmanship and authorizing the use of another company's product to seal the liner sections. In short, Sekisui Australia purposefully directed its activities toward Utah in order to place its product here and continued its contacts after its product arrived.

The court concludes that even though there is no evidence of a course of sales in Utah, Salt Lake City's strong showing that Sekisui Australia specifically targeted its liners toward the state is sufficient to show that it purposely created a substantial connection with Utah. This evidence is directly related to the core question of whether "the defendant purposefully directed its activities

9

at residents of the forum."[5] *See Pro Axess*, 428 F.3d at 1277. Thus, Sekisui Australia's contacts with Utah satisfy the purposeful direction prong of the minimum contacts test.

b) HydraTech

HydraTech also purposefully created substantial contacts with Utah. Notably, HydraTech did not place its product in the stream of commerce, as Sekisui Australia did. It did not deliver its product to an intermediary before it arrived at its destination; HydraTech shipped its product directly to the state of Utah for use in this forum.[6] Thus, the court cannot apply a stream-of-commerce analysis. *See generally*, *McIntyre*, 564 U.S. 873; *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102 (1987).

In cases involving direct sales to the forum jurisdiction, courts may look to the volume of sales when analyzing personal jurisdiction. The Supreme Court has suggested that an isolated sale may not be enough to assert personal jurisdiction: "[I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not

---

[5] The *McIntyre* plurality opinion written by Justice Kennedy and joined by three other justices articulated a test that is more protective of a defendant's due process rights than the Breyer concurrence. Under the Kennedy test, a "defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *McIntyre*, 564 U.S. at 882. For the same reasons described above, the court concludes that Salt Lake City has satisfied the more defendant-friendly intentional targeting test articulated in the Kennedy plurality. It stands to reason, therefore, that the city has also satisfied the less stringent test found in the Breyer concurrence.

[6] HydraTech notes that the purchase order was received from a California entity, Colich & Sons, LP. But the location of the source of the order does not reduce the significance of the contacts with Utah. Regardless of the source of the order, HydraTech shipped its product to Utah for permanent installation in this state.

unreasonable to subject it to suit in one of those States." *World-Wide Volkswagen*, 444 U.S. at 297; *cf. McIntyre*, 564 U.S. 873, 888–89 (Breyer, J., concurring) (noting that an isolated sale may not be an adequate basis for asserting personal jurisdiction under a stream-of-commerce analysis).

In addition to the seals that it delivered for the sewer line project at issue in this case, HydraTech also sold product worth $3,040 to a Utah customer in December 2016. It then made a sale worth $3,290 to the same customer in April 2017. HydraTech's sales in Utah are admittedly limited. But the sales amount to more than "an isolated occurrence."

HydraTech, moreover, went beyond simply shipping seals to Utah. It also sent an employee to Utah for two days to train workers how to install the seals in the sewer line rehabilitation project. This extra measure of sending an agent to the jurisdiction of Utah evidences substantial contacts with this forum. Even a transitory physical presence in a state can establish minimum contacts there because, "[b]y visiting the forum State, a transient defendant actually 'avail[s]' himself, of significant benefits provided by the State." *Burnham v. Superior Court of Cal., Cty. of Marin*, 495 U.S. 604, 637 (1990) (Stevens, J., concurring) (second alteration in original) (citation omitted). Thus, "as a rule the exercise of personal jurisdiction over a defendant based on his voluntary presence in the forum will satisfy the requirements of due process." *Id.* Although HydraTech, as a business entity, could not actually visit Utah, the physical presence of one of its agents in this state contributes to its minimum contacts with this forum.

In short, HydraTech's direct sales to Utah, combined with the temporary physical presence of one of its agents in the state, established substantial contacts with this forum. These substantial contacts satisfy the purposeful direction prong of the minimum contacts test.

ii.    Arising Out Of

The second consideration in the minimum contacts analysis is whether the parties' contacts with the forum state give rise to the plaintiff's claim. "In order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017) (citation and alterations omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.*

Some circuits have held that there must be a "but-for" link between the defendant's contacts with the forum and the plaintiff's claims. *See Mattel, Inc. v. Greiner & Hausser GmbH.*, 354 F.3d 857, 864 (9th Cir. 2003). Other circuits have required a more restrictive proximate cause test. *See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 35 (1st Cir. 1998). The Tenth Circuit has yet to choose between the but-for and proximate cause approaches taken by its sister circuits. *See Dudnikov*, 514 F.3d at 1079 ("As between the remaining but-for and proximate causation tests, we have no need to pick sides today."); *Newsome v. Gallacher*, 722 F.3d 1257, 1270 (10th Cir. 2013) ("We have so far refused to choose one test over the other, and we still need not pick between the two to resolve this case."). This court likewise need not choose between the two approaches because the more restrictive analysis is satisfied.

Under the proximate-cause approach, courts must "examine whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim." *Newsome*, 722 F.3d at 1270 (citation omitted). Plaintiff Salt Lake City asserts four claims against Sekisui Australia and HydraTech: (1) breach of warranty, (2) products liability, (3) negligence, and (4) negligent failure to warn. The gravamen of these claims against Sekisui Australia is that it breached its warranty for

the liner sections that were supplied to the city, that the liner sections were unreasonably dangerous products, that it negligently manufactured the liner, and that it negligently failed to provide warnings regarding the liner. The claims against HydraTech are substantially the same. Salt Lake City asserts that HydraTech breached its warranty for the seals that it supplied for the project, that the seals were unreasonably dangerous products, that it negligently manufactured the seals, and that it negligently failed to provide warnings regarding the seals. All these claims are directly related to Sekisui Australia and HydraTech's contacts with Utah: supplying the liner sections and seals that are at the core of Salt Lake City's claims against these two defendants.

Thus, Sekisui Australia and HyrdraTech's contacts with Utah give rise to Salt Lake City's claims. Because both the purposeful direction and arising out of prongs have been satisfied, the city has met is burden of establishing minimum contacts.

### 2) Fair Play and Substantial Justice

When a party has the requisite minimum contacts with the forum state, "it is incumbent on defendants to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Dudnikov*, 514 F.3d at 1080 (citation omitted). Whether jurisdiction "is so unreasonable as to violate 'fair play and substantial justice'" depends on five factors: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Newsome, 722 F.3d at 1271*. Another important factor that is related to these five factors is whether foreign law will govern the suit. *Id.* at 1272.

i.  Sekisui Australia

Sekisui Australia did not argue in its motion that other considerations would make the exercise of jurisdiction unreasonable. It raised this issue for the first time in a reply brief. Thus, Sekisui Australia has waived this argument. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) ("This court does not ordinarily review issues raised for the first time in a reply brief.).

Even if the court were to consider the brief argument that Sekisui Australia raised for the first time in its reply brief, the court would conclude that it had not met its burden of showing that exercising personal jurisdiction would violate notions of fair play and substantial justice. It argues in a cursory manner that it would be too burdensome to litigate in this forum because it does not have a presence in this state. Although litigating in a foreign forum places an obvious burden on Sekisui Australia, "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *Burger King*, 471 U.S. at 474 (citation omitted). Because it does not address any of the other relevant factors, and because there is no indication that anything other than Utah law will be applied to this dispute, the court does not find Sekisui Australia's superficial argument to be compelling.

ii.  HydraTech

HydraTech argues in its motion that it would be unreasonable to exercise personal jurisdiction over it. It lists the five factors and briefly addresses most of them.

Under the first and third considerations, HydraTech argues that it will be burdened if it is forced to litigate in Utah and that Salt Lake City can obtain effective and convenient relief in the Ohio. But HydraTech does not explain how its burden in litigating in Utah should be given greater weight than the city's burden in litigating in Ohio. Absent any analysis of the respective burdens, the court finds the first and third considerations to be evenly balanced. HydraTech concedes that

the second consideration—this state's interest in resolving the dispute—weighs in favor of finding jurisdiction because a subdivision of the state is the plaintiff. Finally, HydraTech argues that the fourth factor of the judicial system's interest in obtaining the most efficient resolution is equally balanced because justice can be served in either forum. HydraTech does not address the Fifth consideration of the shared interest in furthering fundamental social policies.

In short, the five reasonableness factors are either evenly balanced or favor a finding that exercising personal jurisdiction would be reasonable. HydraTech, moreover, has not argued that the law of a foreign jurisdiction will be applied to the claims against it. Accordingly, HydraTech has not met its burden of showing that subjecting itself to this court's exercise of personal jurisdiction would be so unreasonable as to violate notions of fair play and substantial justice.

### 3) Conclusion

Salt Lake City has met its burden of making a *prima facie* showing that Sekisui Australia and HydraTech are subject to specific personal jurisdiction in Utah. The court, therefore, need not address the city's general personal jurisdiction argument.

## II.    STATUTE OF LIMITATIONS

Sekisui Americas, Sekisui Australia, and HydraTech (collectively, "the defendants") also move to dismiss the claims against them under Rule 12(b)(6). Under this rule, a court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

The defendants argue that the allegations of the complaint, together with documents referenced therein, establish that they should prevail on their statute of limitations defenses as a matter of law. They argue that all of claims asserted against them are either subject to the two-year statute of limitations for product liability claims, UTAH CODE § 78B-6-706, or the four-year statute of limitations under the Utah Uniform Commercial Code, UTAH CODE § 70A-2-725. The defendants further argue that the December 17, 2012 letter that Salt Lake City sent to Southwest establishes that the city had discovered its causes of action by that date. And because Salt Lake City did not file its lawsuit until May 10, 2017, the city did not meet either the two-year or the four-year statute of limitations.

Salt Lake City argues that its breach of warranty claims are subject to a six-year statute of repose described in Utah Code section 78B-2-225(3)(a). It further argues that the December 17, 2012 letter does not conclusively establish that it had discovered its causes of action against the defendants as of that date.

To resolve the parties' arguments, the court first determines the appropriate statute of limitations for each cause of action. The court then addresses whether Salt Lake City pleaded facts that show the date that it discovered, or should have discovered, its causes of action against the defendants.

### A. The Applicable Limitations Periods

To determine which statutes of limitations should be applied to the various causes of action, the court first looks to Utah Code section 78B-2-225, which provides the limitations periods for actions related to improvements to real property (improvements to real property statute). This statute applies to any action that asserts a claim for relief "for acts, errors, omissions, or breach of duty arising out of or related to the design, construction, or installation of an improvement, whether

16

based in tort, contract, warranty, strict liability, indemnity, contribution, or other source of law." UTAH CODE § 78B-2-225(1)(b). The term "improvement" is defined to mean "any building, structure, infrastructure, road, *utility*, or other similar man-made change, addition, modification, or alteration to real property. *Id*. § 78B-2-225(1)(d) (emphasis added).

The conditions for applying this statute have been satisfied in this case. Because a sewer line is a utility, the project to rehabilitate the line was an "improvement to real property." Moreover, Salt Lake City's causes of action for breach of warranty, products liability, negligence, and negligent failure to warn asserted against the defendants all assert claims "arising out of or related to the design, construction, or installation of" this improvement. All of these claims are, at minimum, "related to" the liner installation project because they involve allegations that defective components were incorporated into the project. When these statutory prerequisites have been fulfilled, courts must apply limitations provisions established by the improvements to real property statute. *Craftsman Builder's Supply, Inc. v. Butler Mfg. Co.*, 974 P.2d 1194, 1203 (Utah 1999) ("The legislature clearly intended [Utah Code section 78B-2-225] to apply to products liability actions when they relate to improvements in real property.").

The improvements to real property statute provides:

> (3)(a) An action by or against a provider [any legal entity contributing to the construction of an improvement] based in contract or warranty shall be commenced within six years of the date of completion of the improvement or abandonment of construction. Where an express contract or warranty establishes a different period of limitations, the action shall be initiated within that limitations period.
>
> (b) All other actions by or against a provider shall be commenced within two years from the earlier of the date of discovery of a cause of action or the date upon which a cause of action should have been discovered through reasonable diligence. If the cause of action is discovered or discoverable before completion of the improvement

17

or abandonment of construction, the two-year period begins to run upon completion or abandonment.

(4) Notwithstanding Subsection (3)(b), an action may not be commenced against a provider more than nine years after completion of the improvement or abandonment of construction. In the event the cause of action is discovered or discoverable in the eighth or ninth year of the nine-year period, the injured person shall have two additional years from that date to commence an action.

UTAH CODE § 78B-2-225(3)–(4). Subsections (3)(b) and (4) set the appropriate statute of limitations and statute of repose for all the non-warranty claims against the defendants—i.e., products liability, negligence, and negligent failure to warn. Indeed, Salt Lake City makes no argument regarding the proper statute of limitations for the non-warranty claims, apparently conceding that subsection (3)(b) applies. These claims, therefore, must be brought within two years of when the causes of action were discovered or should have been discovered through the exercise of reasonable diligence,[7] as well as within the nine-year statute of repose.

Subsection (3)(a), on the other hand, sets out the limitations period for the warranty claims against the defendants. A warranty action related to an improvement to real property "shall be commenced within six years of the date of completion of the improvement or abandonment of construction." The parties dispute the meaning of this subsection. Salt Lake City argues that subsection (3)(a) constitutes both a statute of limitations and a statute of repose. Under this theory, plaintiffs would have six years from the completion or abandonment of a project to assert a warranty claim. No other limitation on the time to bring an action would apply. The defendants,

---

[7] Because there is no allegation that Salt Lake City discovered any non-warranty cause of action before completion of the sewer line rehabilitation project was completed, the alternate statute of limitations of two years from completion of the improvement does not apply here.

on the other hand, argue that subsection (3)(a) is only a statute of repose and that a statute of limitations must also be applied to the warranty claims.

The court disagrees with Salt Lake City's assertion that subsection (3)(a) is both a statute of repose and a statute of limitations. "A statute of limitations requires a lawsuit to be filed within a specified period of time after a legal right has been violated or the remedy for the wrong committed is deemed waived. A statute of repose bars all actions after a specified period of time has run from the occurrence of some event other than the occurrence of an injury that gives rise to a cause of action." *Berry ex rel. Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 672 (Utah 1985). Because subsection (3)(a) ties its six-year limitations period to something other than the violation of a legal right, it "is therefore a statute of repose." *Willis v. DeWitt*, 350 P.3d 250, 253 (Utah Ct. App. 2015).

But the fact that subsection (3)(a) is a statute of repose does not necessarily mean that a statute of limitations must also be applied to warranty claims related to an improvement to real property. To determine whether the Utah Legislature intended the statute of repose to supplement an otherwise applicable statute of limitations, or whether it intended the six-year statute of repose to stand as the only limitations period applicable to such warranty claims, the court first looks to other provisions of the improvements to real property statute. *See LPI Servs. v. McGee*, 215 P.3d 135, 139 (Utah 2009) ("We read the plain language of the statute as a whole . . . .").

Subsection (9) of the statute answers the question of whether a statute of limitations found in in another section of the Utah Code should be applied to the warranty claims in this case. It states: "This section does not extend the period of limitation or repose otherwise prescribed by law or a valid and enforceable contract." UTAH CODE § 78B-2-225(9). Thus, a statute of limitations

"otherwise prescribed by law" must also be applied to warranty claims that are related to an improvement to real property.

This result comports with the legislature's stated purpose for enacting the improvements to real property statute. In subsection (2), it listed several findings that supported its decision to "impose the periods of limitation and repose provided" in the statute. The legislature found that:

> (a) exposing a provider to suits and liability for acts, errors, omissions, or breach of duty after the possibility of injury or damage has become highly remote and unexpectedly creates costs and hardships to the provider and the citizens of the state;
>
> (b) these costs and hardships include liability insurance costs, records storage costs, undue and unlimited liability risks during the life of both a provider and an improvement, and difficulties in defending against claims many years after completion of an improvement;
>
> (c) these costs and hardships constitute clear social and economic evils; [and]
>
> (d) the possibility of injury and damage becomes highly remote and unexpected seven years following completion or abandonment . . . .

UTAH CODE § 78B-2-225(2). To address the "clear social and economic evils" presented by extended liability for hidden defects in improvements to real property, the legislature enacted the statute to limit the time that plaintiffs have to bring an action. This express intent runs contrary to a reading of subsection (3)(a) that would result in a longer limitations period.

The court, therefore, must determine which statute of limitations should be applied to the warranty claims. Salt Lake City argues that the six-year statute of limitations for written contracts would be the relevant limitations period. *See* UTAH CODE § 78B-2-309(2). The court, however, agrees with the defendants that the four-year statute of limitations under the Utah Uniform Commercial Code applies here. "[W]here the Uniform Commercial Code sets forth a limitation period for a specific type of action, this limitation controls over an older, more general statute of

limitations." *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 216 (Utah 1984) (holding that the Uniform Commercial Code statute of limitations controlled over the general statute of limitations for a written contract.).

The Uniform Commercial Code establishes a four-year statute of limitations for warranties related to a contract for the sale for goods, i.e., items that are movable at the time of identification to the contract for sale. UTAH CODE § 70A-2-725(1) ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."); *see also id.* § 70A-2-106(1) (defining "contract for sale" as the sale of goods); *Id.* § 70A-2-106(1); *Id.* § 70A-2-105(1) (defining "goods" to mean "all things . . . which are movable at the time of identification to the contract for sale"). Because the liner sections and the joint seals were movable at the time they were sold, any warranties associated with the sale are governed by the statute of limitations found in the Utah Uniform Commercial Code.

In summary, the products liability, negligence, and negligent failure to warn claims are subject to a two-year statute of limitations and a nine-year statute of repose found in Utah Code section 78B-2-225(3)(b) and (4). The warranty claims are subject to a four-year statute of limitations and a six-year statute of repose described in Utah Code sections 70A-2-725(1) and 78B-2-225(3)(a).

### B. *Discovery of the Causes of Action*

Both of the statutes of limitation that are at issue in this case contain explicit discovery clauses. Utah Code section 78B-2-225(3)(b) states that an action "shall be commenced within two years from the earlier of the date of discovery of a cause of action or the date upon which a cause of action should have been discovered through reasonable diligence." Utah Code section

70A-2-725(2), on the other hand, contains a partial discovery clause for warranty claims. That statute provides:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

In the absence of an explicit warranty of future performance, therefore, a warranty claim accrues upon delivery of the good. If there is an explicit warranty of future performance, the action accrues when the breach "is or should have been discovered."

The discovery rule described in these statutes does not require the defendant to know all the facts necessary to make out a claim before the limitations period begins to run. "[A]ll that is required to trigger the statute of limitations is sufficient information to put plaintiffs on notice to make further inquiry if they harbor doubts or questions." *Macris v. Sculptured Software, Inc.*, 24 P.3d 984, 990 (Utah 2001). Thus, "if a party has knowledge of some underlying facts, then that party must reasonably investigate potential causes of action because the limitations period will run." *Colosimo v. Roman Catholic Bishop of Salt Lake City*, 156 P.3d 806, 811 (Utah 2007).

### 1) Sufficiency of Factual Assertions Regarding the Discovery Rule

Generally, a plaintiff has no obligation to plead facts to refute anticipated affirmative defenses. 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1277 (3d. ed. 2004); *Tucker v. State Farm Mut. Auto. Ins. Co.*, 53 P.3d 947, 949–50 (Utah 2002). But where a complaint includes dates indicating the action is untimely, the plaintiff must plead facts that would establish a basis for tolling the statute of limitations. *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980); *Young Res. Ltd. P'ship v. Promontory*

*Landfill LLC*, No. 20160655-CA, 2018 WL 2470958 at *7 (Utah Ct. App. June 1, 2018). Specifically, the plaintiff must plead the time and manner of the discovery of the cause of action, as well as facts showing the inability to discover the action sooner through the exercise of reasonable diligence. *Wood v. Carpenter*, 101 U.S. 135, 140–41 (1879) (a plaintiff alleging delayed discovery of a fraud claim must plead when and how the discovery was made and why the claim was not discovered sooner); *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920–21 (Cal. 2005) ("[A] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.").

Here, the allegations of the complaint, along with the December 17, 2012 letter to Southwest referenced in the complaint,[8] indicate that Salt Lake City's action may be untimely. The letter states that on November 29, 2012, the city had tested the rehabilitated section of sewer line and had discovered "a significant defect and leak in the liner" that was "allowing 1.0 to 1.5 million gallons per day . . . groundwater infiltration . . . into the pipeline." Through dye testing and measuring conductivity, total dissolved solids, and temperature, the city had even located the approximate location of the leak. The letter demanded that Southwest "correct the defective work" and fix the leak by February 28, 2013.

---

[8] "[A] document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute." *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005). Salt Lake City referenced the December 12, 2012 letter in its amended complaint. Although it did not attach the letter to the complaint, it attached the letter to its responses to the defendants' motions to dismiss. No party disputes the authenticity of the letter, and the court may consider its contents to resolve the motions to dismiss. Because the court may properly consider the document, it is the text of the letter that controls, not the amended complaint's description of the contents of the letter.

At least by December 17, 2012, therefore, Salt Lake City knew that something had gone wrong with the sewer line rehabilitation project, giving rise to a duty to investigate the cause of the leak in the line and the identity of the manufacturer of any faulty components that may have contributed to the leak. *See Hansen v. Novartis Pharm. Corp.*, No. 2:08-CV-985, 2011 WL 6100848, at \*3 (D. Utah Dec. 7, 2011) (the statute of limitations for a claim based upon a defective product "begins to run when the plaintiff discovers, or should have discovered: (1) that she has been injured; (2) the identity of the maker of the allegedly defective product; and (3) that the product had a possible causal relation to her injury") (citing *Aragon v. Clover Club Foods Co.*, 857 P.2d 250, 252–53 (Utah Ct. App. 1993)). Because the letter was sent more than four years before the city initiated this action, the complaint pleads facts indicating that all of the claims against the defendants may be untimely under either the four-year statute of limitations for the warranty claims or the two-year statute of limitations for the non-warranty claims. The city, therefore, was required to plead facts showing that the statute of limitations had been tolled.

Salt Lake City, however, did not assert when and how it discovered that the fault of the defendants caused the leak. Nor did the city allege facts that would show an inability to discover the defendants' fault sooner. The city, moreover, did not assert any additional facts in its responses to the defendants' motions to dismiss to establish that the statute of limitations had been tolled. *See Am. Mech. Sols., L.L.C. v. Northland Process Piping, Inc.*, 184 F. Supp. 3d 1030, 1049 (D.N.M. 2016) (noting that "the Tenth Circuit has not clarified whether [delayed discovery] must be pled with supporting facts in the complaint or may be merely argued in response to the motion [to dismiss]"). Because there are no facts to support the tolling of the statutes of limitation applicable to the claims against the defendants, the court must dismiss all the claims against Sekisui Americas, Sekisui Australia, and HydraTech.

2) Sufficiency of Factual Assertions Regarding the Warranty Claim Against HydraTech

The warranty claim against HydraTech must be dismissed for an additional reason. As noted above, the discovery rule applies to the warranty claims only if the supplier of a good makes an express warranty of future performance. UTAH CODE § 70A-2-725(2). The complaint alleges facts that satisfy the warranty of future performance requirement as to Sekisui Americas and Sekisui Australia. The complaint avers that these entities warranted that the liner against "any breakdown for the material effectiveness of the structural repair elements" for three years. Salt Lake City, however, does not allege that HydraTech made a similar express warranty regarding the future performance of its seals. Absent an express warranty of future performance, the warranty claim against HydraTech would accrue upon delivery of the seals, regardless of when the city discovered any defects. Because delivery of the seals necessarily occurred more than four years before this action was filed, the warranty claim against HydraTech must also be dismissed for a failure to plead an express warranty of future performance.

C. Leave to Amend

Amendments that are not permitted as a matter of course under Rule 15(a)(1) of the Federal Rules of Civil Procedure require written consent from the opposing party or leave of the court. FED. R. CIV. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (citation omitted).

Here, Salt Lake City has not had an opportunity to amend its complaint to address the defendants' statute of limitations affirmative defenses. Thus, the court cannot conclude that the city will not be able to allege facts showing that the statutes of limitation have been tolled. Moreover, as noted above, plaintiffs normally have no obligation to plead facts to counter anticipated affirmative defenses. The duty arose in this case only because the city pleaded the dates of significant events in its complaint. Because Salt Lake City did not know that the defendants would raise statute of limitations defenses until they filed their motions to dismiss, fairness dictates that the city be given a chance to amend to address this affirmative defense.

Accordingly, the court grants Salt Lake City 21 days form the date of this order to amend its complaint, if it can, to allege the time and manner of its discovery of its causes of action against the defendants, as well as facts showing an inability to discover the causes of action sooner through the exercise of reasonable diligence. The city may also amend the complaint to allege facts showing that HydraTech expressly warranted the future performance of the seals, if it is able to do so.

## CONCLUSION AND ORDER

The court orders as follows:

1. The court GRANTS Sekisui Americas' Rule 12(b)(6) motion to dismiss the claims against it. [Docket 28.]

2. The court GRANTS IN PART AND DENIES IN PART Sekisui Australia's motion to dismiss. [Docket 29.] The court denies the motion to the extent that it seeks dismissal under Rule 12(b)(2) for lack of personal jurisdiction. The court grants the motion to the extent that it seeks dismissal of the claims against Sekisui Australia under Rule 12(b)(6) for a failure to state a claim upon which relief may be granted.

3. The court GRANTS IN PART AND DENIES IN PART HydraTech's motion to dismiss. [Docket 35.] The court denies the motion to the extent that it seeks dismissal under Rule 12(b)(2) for lack of personal jurisdiction. The court grants the motion to the extent that it seeks dismissal of the claims against HydraTech under Rule 12(b)(6) for a failure to state a claim upon which relief may be granted.

4. Dismissal of Salt Lake City's claims against Sekisui Americas, Sekisui Australia, and HydraTech shall be without prejudice. Salt Lake City has leave from the court to file an amended complaint by October 19 that addresses the deficiencies identified in this Order, if it is able to do so.

DATED September 28, 2018.

BY THE COURT

Jill N. Parrish
United States District Court Judge

27