IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SALT LAKE CITY CORPORATION;<br><br>Plaintiff;<br><br>v.<br><br>SEKISUI SPR AMERICAS, LLC; SEKISUI RIB LOC AUSTRALIA PTY LTD.; SOUTHWEST PIPELINE AND TRENCHLESS CORP.; SAFECO INSURANCE COMPANY OF AMERICA, INC.; HYDRATECH ENGINEERED PRODUCTS, LLC; and DOES 1–10;<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SOUTHWEST'S CROSSCLAIMS**<br><br>Case No. 2:17-cv-01095-JNP-BCW<br><br>District Judge Jill N. Parrish |

Before the court is a motion to dismiss Southwest Pipeline and Trenchless Corp.'s crossclaims against Sekisui SPR Americas, LLC (Sekisui Americas) and Sekisui Rib Loc Australia Pty Ltd. (Sekisui Australia). [Docket 62.] The court GRANTS IN PART AND DENIES IN PART the motion.

## BACKGROUND

Salt Lake City requested bids to rehabilitate a sewer line by installing a liner within the existing sewer pipe. Southwest won the bid. Either Sekisui Americas or Sekisui Australia[1] provided its proprietary liner product to Southwest for use in the project.

---

[1] Although Southwest asserted crossclaims against both Sekisui Americas and Sekisui Australia, Southwest made the unadvisable choice to refer to these two separate entities collectively as "Sekisui." Thus, it is impossible to tell whether the allegations in the crossclaim regarding "Sekisui" refer to Sekisui Americas, Sekisui Australia, or both.

Sometime before November 7, 2012, Southwest finished the sewer line rehabilitation project. In October 2015, Salt Lake City sent a letter to Sekisui Americas and Sekisui Australia alleging that an inspection of the rehabilitated sewer line revealed numerous defects in the liner materials the two companies supplied for the project.

On May 10, 2017, Salt Lake City sued Sekisui Americas and Sekisui Australia. On November 8, 2017, the city filed an amended complaint that added claims against Southwest. The amended complaint alleges that Sekisui Americas, Sekisui Australia, and Southwest are liable to it for their failure to supply or install a watertight liner for the sewer line.

On May 4, 2018, Southwest answered the amended complaint and asserted three crossclaims against Sekisui Americas and Sekisui Australia: (1) breach of contract and breach of warranty (breach of contract/warranty claim), (2) apportionment of fault, and (3) indemnification.

## ANALYSIS

Sekisui Americas and Sekisui Australia (collectively, the Sekisui defendants) move to dismiss portions of Southwest's crossclaims against them for five reasons. First, Sekisui Australia moves to dismiss the claims against it under Rule 12(b)(2) for lack of personal jurisdiction. Second, the Sekisui defendants move to dismiss the breach of contract/warranty claim, arguing that it is barred by the statute of limitations.[2] Third, the Sekisui defendants move to dismiss the breach of contract/warranty cause of action for failure to state a plausible claim. Fourth, the Sekisui defendants move to dismiss the indemnification claim, arguing that a contract between the parties requires Southwest to indemnify Sekisui Americas and Sekisui Australia. And Fifth, the Sekisui

---

[2] In its brief, the Sekisui defendants argue at times that all of Southwest's crossclaims should be dismissed on statute of limitations grounds. But the defendants provide no separate statute of limitations analysis of the apportionment of fault and indemnification claims.

defendants move to dismiss the apportionment of fault claim, asserting that Utah's apportionment statute does not apply to warranty and contract claims. The court addresses each of these arguments in turn.

## I. PERSONAL JURISDICTION

In a previous motion, Sekisui Australia argued that Salt Lake City's claims against it should be dismissed under Rule 12(b)(2) because the city failed to establish that this court had personal jurisdiction over it. [Docket 29.] In an order issued on September 28, 2018, the court found that it had specific personal jurisdiction over Sekisui Australia and denied its Rule 12(b)(2) motion. [Docket 71.]

Sekisui Australia raises almost identical arguments in the present motion. It also attaches the same affidavits that it presented in its prior motion to dismiss for lack of personal jurisdiction. Southwest likewise proffers the same affidavit of Justin Duchaineau that Salt Lake City presented in the prior motion. Because the same arguments and the same jurisdictional facts that were at issue in Sekisui Australia's prior motion to dismiss for lack of personal jurisdiction are at issue in this motion, the court adopts it analysis of this issue found in the September 28, 2018 Order. The court concludes that it has specific personal jurisdiction over Sekisui Australia and denies the motion to dismiss the crossclaims against it.

## II. STATUTE OF LIMITATIONS

Next, the Sekisui defendants argue that Southwest's crossclaim for breach of contract/warranty is barred by the statute of limitations. Although Southwest pleads a single cause of action, it effectively asserts two distinct claims. First, it asserts that the Sekisui defendants breached a warranty that the liner product would perform properly for the Salt Lake City project. Second, Southwest alleges that the Sekisui defendants breached an agreement "to provide to

3

Southwest appropriate and accurate training, instruction, [and] oversight services regarding installation of the . . . liner products and materials purchased from Sekisui." The court addresses the warranty crossclaim and the contract crossclaim separately.

### A. *Warranty Crossclaim*

The parties dispute which statute of limitations applies to Southwest's breach of warranty crossclaim. Thus, the court first determines the appropriate statute of limitations for this claim. The court then addresses whether the allegations of the crossclaim establish that the Sekisui defendants are entitled to dismissal of this claim on statute of limitations grounds.

#### 1) The Applicable Limitations Period

To determine which statutes of limitations should be applied to the breach of warranty crossclaim, the court first looks to Utah Code section 78B-2-225, which provides the limitations periods for actions related to improvements to real property (improvements to real property statute). This statute applies to any action that asserts a claim for relief "for acts, errors, omissions, or breach of duty arising out of or related to the design, construction, or installation of an improvement, whether based in tort, contract, warranty, strict liability, indemnity, contribution, or other source of law." UTAH CODE § 78B-2-225(1)(b). The term "improvement" is defined to mean "any building, structure, infrastructure, road, *utility*, or other similar man-made change, addition, modification, or alteration to real property." *Id.* § 78B-2-225(1)(d) (emphasis added).

The conditions for applying this statute have been satisfied in this case. Because a sewer line is a utility, the project to rehabilitate the line was an "improvement to real property." And Southwest's crossclaim for breach of warranty "aris[es] out of or relate[s] to the design, construction, or installation of" this improvement because the crossclaim involves allegations that the liner used to rehabilitate the sewer line was defective. When these statutory prerequisites have

4

been fulfilled, courts must apply limitations provisions established by the improvements to real property statute. *Craftsman Builder's Supply, Inc. v. Butler Mfg. Co.*, 974 P.2d 1194, 1203 (Utah 1999).

The improvements to real property statute provides that an "action by or against a provider [any legal entity contributing to the construction of an improvement] based in contract or warranty shall be commenced within six years of the date of completion of the improvement or abandonment of construction." UTAH CODE § 78B-2-225(3)(a). This six-year limitations period is a statute of repose, not a statute of limitations. *Willis v. DeWitt*, 350 P.3d 250, 253 (Utah Ct. App. 2015); *see also Berry ex rel. Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 672 (Utah 1985). And given that the improvements to real property statute explicitly states that this statute of repose "does not extend the period of limitation or repose otherwise prescribed by law," the court must also apply a statute of limitations to the breach of warranty crossclaim. *See* UTAH CODE § 78B-2-225(9).

The court agrees with the Sekisui defendants that the four-year statute of limitations for the breach of a warranty under the Utah Uniform Commercial Code (UCC) applies to Southwest's breach of warranty crossclaim. *See* UTAH CODE § 70A-2-725(1) ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."); *see also id.* § 70A-2-106(1) (defining "contract for sale" as the sale of goods); *Id.* § 70A-2-105(1) (defining "goods" to mean "all things . . . which are movable at the time of identification to the contract for sale"); *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 216 (Utah 1984) ("[W]here the Uniform Commercial Code sets forth a limitation period for a specific type of action, this limitation controls over an older, more general statute of limitations."). Southwest's warranty

crossclaim, therefore, is subject to a four-year statute of limitations and a six-year statute of repose described in Utah Code sections 70A-2-725(1) and 78B-2-225(3)(a).[3]

2) Application of the Statute of Limitations to the Allegations of the Complaint

To determine whether the four-year statute of limitations bars Southwest's breach of warranty crossclaim, the court must first analyze Utah Code section 70A-2-725(1) to determine when the crossclaim accrued. Then the court must decide whether any of the dates pleaded in the crossclaim indicate that this claim is untimely.

i. Accrual Date for the Warranty Claim

Utah Code section 70A-2-725(2) contains a partial discovery clause for warranty claims. That statute provides:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the

---

[3] Southwest argues that *Craftsman Builder's Supply, Inc. v. Butler Mfg. Co.*, 974 P.2d 1194 (Utah 1999) stands for the proposition that courts should apply only the six-year statute of repose found in the improvements to real property statute. The court disagrees. In *Craftsman*, the plaintiff sued a builder many years after the six-year statute of repose had run. *Id.* at 1195. The plaintiff argued that the Utah Supreme Court should disregard the statute of repose and apply a discovery-based products liability statute of limitations instead. *Id.* at 1203. The *Craftsman* court disagreed. It held that courts must apply the six-year statute of repose when the conditions of the improvements to real property statute have been satisfied. *Id.* But the question in this case is not whether to apply the six-year statute of repose; it is whether to apply a statute of limitations "otherwise prescribed by law" in addition to the statute of repose. *See* UTAH CODE § 78B-2-225(9). Therefore, *Craftsman* is inapposite to the issue before the court.

Moreover, the version of the improvements to real property statute interpreted in *Craftsman* is different from the current iteration of the statute. The statute interpreted by *Craftsman* contained both a repose provision and a limitations provision for warranty claims. *Craftsman*, 974 P.2d at 1201–02. The current version of the statute does not contain a limitations provision for warranty claims. UTAH CODE § 78B-2-225(3)(a).

> cause of action accrues when the breach is or should have been discovered.

In short, a warranty claim accrues upon delivery of the good unless there is an explicit warranty of future performance. If there is an explicit warranty of future performance, the action accrues when the breach "is or should have been discovered."

In order to determine the accrual date for the warranty crossclaim, therefore, the court must determine whether Southwest alleges the breach of a warranty of future performance. "To fall within the future performance exception, 'a warranty must explicitly promise or guarantee future performance of the goods; it must be clear, unambiguous and unequivocal.'" *Salt Lake City Corp. v. Kasler Corp.*, 855 F. Supp. 1560, 1568 (D. Utah 1994) (citation omitted). Examples of language that creates a warranty of future performance includes "'will satisfactorily perform at all times,' 'will work properly for a lifetime,' or 'will give satisfactory service at all times.'" *Id.* Guaranties of future performance may also be implicit. For example, guarantees of "absence of significant micromovement" and "absence of fretting corrosion" in an artificial hip are warranties of future performance because these conditions could arise only after the hip is surgically implanted. *Broten v. Wright Med. Grp., Inc.*, No. 2:16-cv-00049-JNP-BCW, 2016 WL 10459793, at *2 (D. Utah June 2, 2016).

In this case, Southwest alleges that the Sekisui defendants "warranted that its materials and products would perform properly for the specific Project." Similar to the promises made about the artificial hip in *Broten*, this is a guaranty that the liner materials would function properly *after* they were installed in the Salt Lake City project. This is necessarily a warranty of future performance. Thus, Southwest's warranty claim accrued when the breach was or should have been discovered.

7

ii. Dates Alleged in the Complaint

The Sekisui defendants attach a December 17, 2012 letter from Salt Lake City to Southwest to their motion to dismiss. They argue that the letter initiated the four-year period to bring a claim or crossclaim because it notified Southwest that the city had found leaks in the rehabilitated sewer line. And since Southwest did not assert its breach of warranty crossclaim until May 4, 2018, the Sekisui defendants assert that the statute of limitations for this claim had already run.[4] The court rejects the Sekisui defendants' statute of limitations argument because it may not consider the December 17, 2012 letter.

Generally, a plaintiff has no obligation to plead facts to refute an anticipated statute of limitations affirmative defense. 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1277 (3d. ed. 2004). But where a complaint includes dates indicating the action is untimely, the plaintiff must plead facts that would establish a basis for tolling the statute of limitations. *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). Southwest makes no mention of the December 17, 2012 letter in its crossclaim. The court, therefore, may not consider the letter without converting the motion to one for summary judgment. *Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004) ("Where a party has moved to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted and matters outside of the pleadings have been presented to the court for consideration, the court must either exclude the material or treat the motion as one for summary judgment . . . ." (citation

---

[4] The parties do not address whether Southwest's crossclaim would relate back to the date when Salt Lake City initially sued the Sekisui defendants: May 10, 2017. But since the date when Salt Lake City filed its complaint also falls outside of the four-year statute of limitations under the Sekisui defendants' argument, the court need not address this question *sua sponte*.

omitted)). The only relevant date that Southwest pleads in its crossclaim is October 2015, when Salt Lake City delivered letters to Southwest and the Sekisui defendants that notified them of defects in the liner materials installed by Southwest. Because the only pertinent date pleaded by Southwest indicates that it brought the crossclaim within the four-year statute of limitations, the court may not dismiss the crossclaim at this stage of the litigation. Absent an amendment to the crossclaim that adds additional dates, the Sekisui defendants must await summary judgment to assert a statute of limitations defense based upon the December 17, 2012 letter.

### B. Contract Crossclaim

The court next addresses whether Southwest's breach of contract crossclaim is barred by the relevant statute of limitations. The first order of business is to determine the appropriate limitations period for Southwest's claim that the Sekisui defendants breached a contract to provide "appropriate and accurate training, instruction, [and] oversight services regarding installation of the . . . liner products and materials purchased from Sekisui." The court must then decide whether the allegations of the complaint indicate that this crossclaim was filed outside of this limitations period.

Similar to the warranty crossclaim, Utah Code section 78B-2-225 provides for a six-year statute of repose for the contract crossclaim because it asserts a claim for relief "for acts, errors, omissions, or breach of duty arising out of *or related to* the design, construction, or installation of an improvement" to real property. UTAH CODE § 78B-2-225(1)(b) (emphasis added). In addition, for the same reasons stated above, the court must also apply the appropriate statute of limitations to the contract crossclaim.

Because the contract alleged by Southwest involves services rather than goods, the court looks to statutes of limitation for general contract claims rather than the statute of limitations found

9

in the UCC.[5] *See* UTAH CODE §§ 70A-2-106(1) & -725(1) (limiting the UCC's four-year statute of limitations to contracts for the sale of goods). The rather spare allegations of the crossclaim, however, do not provide enough information to determine whether the six-year statute of limitations for the breach of a written contract or the four-year statute of limitations for the breach of an oral contract applies here. *See* UTAH CODE §§ 78B-2-307(1)(a) & -309(2).

The difference between a four-year and a six-year statute of limitations is potentially dispositive in this case. Because the alleged contract required the Sekisui defendants to provide competent training and oversight regarding installation of the liner, any claim based upon a breach of this obligation necessarily accrued before Southwest finished the installation process.[6] The crossclaim, moreover, establishes that Southwest finished the project at least by November 7, 2012, because on this date the Sekisui defendants warranted that the installation process had been successfully completed. The allegations of the crossclaim, therefore, indicate that a four-year statute of limitations for the breach of an oral contract, absent tolling, would have run before Southwest filed its crossclaim on May 4, 2018. But if the six-year statute of limitations for breach of a written contract applies, the crossclaim, at least on its face, is timely.

---

[5] If Southwest had alleged the existence of a hybrid contract that involved both goods and services, however, the ultimate determination of whether to apply the UCC statute of limitations or a general breach of contract statute of limitations would turn on whether the contract was primarily a contract for the sale of goods or primarily a contract for services. *See Utah Local Gov't Tr. v. Wheeler Mach. Co.*, 199 P.3d 949, 956 (Utah 2008).

[6] Even if any damages caused by the alleged breach of contract did not arise until after the project had been completed, the contract crossclaim accrued at the time of the breach because nominal damages are immediately recoverable. *See Clarke v. Living Scriptures, Inc.*, 114 P.3d 602, 604 & n.1 (Utah Ct. App. 2005).

Because a date alleged in the crossclaim suggests that the contract claim may be untimely, Southwest has the obligation to plead facts clarifying whether it is asserting the breach of an oral or a written contract. And if Southwest alleges an oral contract, it has the further burden of pleading facts showing that the four-year statute of limitations had been tolled. *See Aldrich*, 627 F.2d at 1041 n.4. Southwest has done neither. The court, therefore, dismisses the contract crossclaim without prejudice and grants Southwest leave to amend.

### III. FAILURE TO STATE A CLAIM

The Sekisui defendants also argue that the warranty and contract crossclaims should be dismissed under Rule 12(b)(6) because the allegations of the crossclaim are inadequate to state a claim upon which relief can be granted. When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

The Sekisui defendants first contend that the crossclaims for breach of warranty and contract should be dismissed because they are based upon contingent allegations of fact. They take issue with Southwest's following assertion: "Based on the allegations and assertions of the City against Southwest, *if proven to be true*, Sekisui has breached its contracts and warranties to and with Southwest regarding the Sekisui SPR PE liner and materials." (Emphasis added). The Sekisui

defendants assert, without citing authority, that the equivocal phrase "if proven to be true" is insufficient to support a claim for relief. The court rejects this argument. Rule 8(d)(2) specifically permits litigants to plead in the alternative or hypothetically.

The defendants also argue that Southwest failed to adequately plead its warranty claim because the crossclaim does not specify the source of the alleged warranty. The court agrees. The crossclaim baldly states that "Sekisui warranted that its materials and products would perform properly for the specific project." But the crossclaim contains no allegations as to how this warranty was made and to whom. The Sekisui defendants are left to guess precisely who made the warranty and how, whether it was an express or implied warranty, and whether the warranty was made to Southwest or another party. Without these basic factual allegations, the Sekisui defendants are denied fair notice of the "actual grounds of the claim against them." *Robbins*, 519 F.3d at 1248. The court, therefore, dismisses the warranty claim without prejudice.[7]

Finally, the Sekisui defendants argue that Southwest did not sufficiently plead its contract claim because it did not specify the contractual provision that was breached or how the breach occurred. Again, the court agrees. Southwest generally alleges the existence of an agreement to provide training and oversight but does not indicate whether the alleged promise was made in a written or oral contract. Nor does Southwest allege how the Sekisui defendants breached the agreement. Thus, for the same reasons that the court dismisses the warranty claim, the court also dismisses the contract claim without prejudice.

---

[7] The Sekisui defendants also argue that to the extent that the alleged warranty is the November 7, 2012 written warranty Sekisui Americas provided to Salt Lake City, Southwest has no standing to assert a claim under this warranty. Because Southwest has not specified the basis for its warranty crossclaim, this argument is premature.

## IV. INDEMNIFICATION CROSSCLAIMS

The Sekisui defendants next assert that the indemnification crossclaim fails as a matter of law. They attach a November 1, 2008 distributorship agreement to their motion to dismiss and argue that an indemnification clause found in this contract defeats Southwest's indemnification crossclaim.

The court, however, may not consider this argument. On a motion to dismiss, the court can consider a document that is not attached to a complaint (or in this case, a crossclaim) only if the document is referenced in the complaint, the document is central to the plaintiff's claim, and the document's authenticity is not in dispute. *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005); *County of Santa Fe v. Pub. Serv. Co. of New Mexico*, 311 F.3d 1031, 1045 (10th Cir. 2002). Although the crossclaim references the fact that the parties entered into a distributorship agreement on November 1, 2008, the contract is not central to any of Southwest's crossclaims. Southwest does not explicitly assert, for example, that the Sekisui defendants breached the distributorship agreement. Because the court may not consider the contract at this stage of the litigation, the defendants' contractual indemnification argument cannot be resolved on a motion to dismiss.

## V. ALLOCATION OF FAULT CROSSCLAIM

Salt Lake City asserts three causes of action against Southwest: breach of contract, breach of the American Public Works Association warranty, and breach of the workmanship warranty. Southwest's apportionment of fault crossclaim seeks to allocate at least a portion of its liability for these claims to the Sekisui defendants. The Sekisui defendants argue that the apportionment crossclaim fails as a matter of law because Utah's apportionment of fault statute does not apply to the breach of contract and breach of warranty claims for which Southwest seeks apportionment.

Because the apportionment statute explicitly applies to at least the warranty claims, the court denies the Sekisui defendants' request to dismiss the apportionment crossclaim.

The Utah Liability Reform Act permits a defendant to require the factfinder to allocate damages to other individuals or entities based upon "the percentage or proportion of fault attributable" to the other individuals or entities. UTAH CODE § 78B-5-819(1). "Fault" is a defined by the Act to mean

> any actionable breach of legal duty, act, or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all its degrees, comparative negligence, assumption of risk, strict liability, *breach of express or implied warranty of a product*, products liability, and misuse, modification, or abuse of a product.

*Id.* § 78B-5-817(2) (emphasis added). This language explicitly includes the breach of a warranty within the definition of fault that may be allocated. *See Interwest Const. v. Palmer*, 886 P.2d 92, 100 (Utah Ct. App. 1994) ("The plain language of these provisions makes clear that a court shall consider a plaintiff's comparative negligence and comparative assumption of the risk in determining liability for a claim of breach of warranty."). This definition of fault to also comports with Utah common law. Prior to the enactment of the Utah Liability Reform Act, the Utah Supreme Court held that the common-law defense of contributory negligence applied to breach of warranty claims. *Vernon v. Lake Motors*, 488 P.2d 302, 304–05 (Utah 1971).

Under the Utah Liability Reform Act, therefore, the factfinder may allocate fault for Salt Lake City's two breach of warranty claims against Southwest.[8] Thus, the court denies the Sekisui defendants' motion to dismiss Southwest's allocation of fault crossclaim.

## CONCLUSION AND ORDER

For the foregoing reasons, the court GRANTS IN PART AND DENIES IN PART the Sekisui defendants' motion to dismiss, [Docket 62.], and orders as follows:

1. The court denies the motion to the extent that it seeks dismissal under Rule 12(b)(2) for lack of personal jurisdiction.

2. The court grants the motion to the extent that it seeks dismissal of the first crossclaim for breach of warranty/contract. Dismissal is without prejudice. Southwest has leave from the court to file an amended complaint by December 7, 2018 that addresses the deficiencies identified in this Order, if it is able to do so.

3. The court denies the motion to the extent that it seeks dismissal of the indemnification and allocation of fault crossclaims.

DATED November 16, 2018.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

---

[8] Because Salt Lake City's breach of warranty claims against Southwest are subject to allocation, the court need not decide at this juncture whether fault for the breach of a contract claim may also be allocated.