## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SALT LAKE CITY CORPORATION;<br><br>Plaintiff;<br><br>v.<br><br>SEKISUI SPR AMERICAS, LLC; SEKISUI RIB LOC AUSTRALIA PTY LTD.; SOUTHWEST PIPELINE AND TRENCHLESS CORP.; SAFECO INSURANCE COMPANY OF AMERICA, INC.; HYDRATECH ENGINEERED PRODUCTS, LLC; and DOES 1–10;<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND DENYING MOTIONS TO CERTIFY QUESTIONS TO THE UTAH SUPREME COURT**<br><br>Case No. 2:17-cv-01095-JNP-BCW<br><br>District Judge Jill N. Parrish |

Salt Lake City Corporation hired Southwest Pipeline and Trenchless Corporation (Southwest) to rehabilitate a sewer line. Southwest used components supplied by Sekisui Rib Loc Australia Pty Ltd. (Sekisui Australia), Sekisui SPR Americas, LLC (Sekisui Americas), and HydraTech Engineered Products, LLC (HydraTech) to complete the project. Salt Lake City subsequently sued Southwest, Sekisui Australia, Sekisui Americas, and HydraTech, alleging that the rehabilitated sewer line was leaking. Southwest filed crossclaims against Sekisui Australia, Sekisui Americas, and HydraTech for breach of contract, apportionment of fault, and indemnification.

Before the court are motions to dismiss Salt Lake City's amended complaint filed by Sekisui Australia, Sekisui Americas, and HydraTech, [Docket 79, 80, 84], and a motion to dismiss Southwest's amended crosscomplaint filed by Sekisui Australia and Sekisui Americas, [Docket

105]. Salt Lake City and Southwest also filed motions to certify statute of limitations questions to the Utah Supreme Court. [Docket 93, 121].

The court GRANTS Sekisui Australia's, Sekisui Americas', and HydraTech's motions to dismiss Salt Lake City's causes of action against them. The court GRANTS IN PART and DENIES IN PART Sekisui Australia's and Sekisui Americas' motion to dismiss Southwest's crossclaims against them. Finally, the court DENIES Salt Lake City's and Southwest's motion to certify questions to the Utah Supreme Court.

## BACKGROUND

Salt Lake City requested bids to rehabilitate a sewer line by installing a liner within the existing pipe. This "trenchless" method of rehabilitating the sewer line avoids the need to dig up and replace the pipe. Southwest won the bid. Sekisui Australia and Sekisui Americas sold their proprietary liner product to Southwest for use in the project. HydraTech supplied joints that were used to connect and seal the sections of pipe liner used in the project.

Sometime in late 2012, Southwest finished the sewer line rehabilitation project and Salt Lake City began to use the rehabilitated line to transport sewage to a treatment plant. On December 17, 2012, the city sent a letter to Southwest. The letter stated that on November 29, 2012, Salt Lake City had tested the rehabilitated section of sewer line and had discovered "a significant defect and leak in the liner." The letter stated that the defect was "allowing 1.0 to 1.5 million gallons per day . . . groundwater infiltration with extremely high total dissolved solids . . . into the pipeline." The letter demanded that Southwest "correct the defective work" by February 28, 2013. Over the next two and a half years, Southwest and the city formulated a number of plans to fix the leaks and Southwest made one unsuccessful attempt to repair the sewer line. On June 22, 2015, Southwest declined to make any further plans to repair the sewer line.

On May 10, 2017, Salt Lake City sued Sekisui Australia and Sekisui Americas. On November 8, 2017, the city amended its complaint to add claims against Southwest and HydraTech. This amended complaint asserted claims for (1) breach of warranty, (2) products liability, (3) negligence, and (4) negligent failure to warn against Sekisui Australia, Sekisui Americas, and HydraTech. Meanwhile, Southwest sued Sekisui Australia and Sekisui Americas on October 2, 2017. That lawsuit was consolidated with crossclaims that Southwest had asserted in this lawsuit. The crossclaims asserted by Southwest included claims for breach of contract, breach of warranty, and indemnification against Sekisui Australia and Sekisui Americas and an apportionment of fault claim against Sekisui Australia, Sekisui Americas, and HydraTech.

The court dismissed all of Salt Lake City's claims against Sekisui Australia, Sekisui Americas, and HydraTech on statute of limitations grounds. The court granted the city leave to amend its complaint to plead "the time and manner of its discovery of its causes of action against the[se] defendants, as well as facts showing an inability to discover the causes of action sooner through the exercise of reasonable diligence." The court also dismissed Southwest's crossclaim for breach of contract against Sekisui Australia and Sekisui Americas on statute of limitations grounds and dismissed the breach of warranty crossclaim against these two defendants because Southwest failed to adequately plead this claim. The court granted Southwest leave to amend its crosscomplaint to remedy these defects if it could.

Salt Lake City filed a second amended complaint, pleading additional facts related to its assertion that the statute of limitations on the claims against Sekisui Australia, Sekisui Americas, and HydraTech had been tolled by the discovery rule. Southwest also filed an amended crosscomplaint. Southwest abandoned its breach of warranty crossclaim, but pleaded additional

facts related to its breach of contract crossclaim against Sekisui Australia and Sekisui Americas. Southwest also added a new crossclaim against HydraTech for breach of contract.

Sekisui Australia, Sekisui Americas, and HydraTech moved to dismiss the claims asserted against them in Salt Lake City's Second Amended Complaint. Sekisui Australia and Sekisui Americas also filed a motion to dismiss the claims asserted against them in Southwest's amended crosscomplaint. Finally, Salt Lake City and Southwest filed motions to certify to the Utah Supreme Court questions about the proper statute of limitations to apply to the claims in this case.

## ANALYSIS

## I.    MOTIONS TO DISMISS SALT LAKE CITY'S COMPLAINT

### A.   *Personal Jurisdiction*

Sekisui Australia renewed its argument that this court lacks personal jurisdiction to hear Salt Lake City's claims against it. But it did not assert new jurisdictional facts or provide new arguments. Instead, Sekisui Australia "incorporate[d] by reference the personal jurisdiction arguments made in its Motion to Dismiss filed on December 8, 2017." The court, therefore, adopts the analysis of this issue set forth in its September 28, 2018 Order. The court concludes that it has specific personal jurisdiction over Sekisui Australia and denies the motion to dismiss the claims against it.

### B.   *Statute of Limitations*

Sekisui Australia, Sekisui Americas, and HydraTech (collectively, the defendants) argue that all of the causes of action asserted against them should be dismissed because the allegations of the complaint establish that these claims are barred by the applicable statutes of limitations. In order to determine whether the defendants' statute of limitations arguments have merit, the court must answer three questions: (1) What are the applicable limitation periods for each cause of

action? (2) When did each limitations period begin to run? and (3) Do the allegations of the complaint indicate that any of the statutes of limitations may have been tolled by the discovery rule? The court addresses each of these questions in turn.

    1)   Applicable Limitations Periods

        a)   Utah Code section 78B-2-225

The court explained in its September 28, 2018 Order that it must look first to Utah Code section 78B-2-225, which provides limitations periods for actions arising out of improvements to real property (improvements to real property statute). The parties concede that this statute applies to Salt Lake City's claims and that it is the starting point for the statute of limitations analysis.

The improvements to real property statute provides:

> (3)(a) An action by or against a provider [any legal entity contributing to the construction of an improvement] based in contract or warranty shall be commenced within six years of the date of completion of the improvement or abandonment of construction. Where an express contract or warranty establishes a different period of limitations, the action shall be initiated within that limitations period.

> (b) All other actions by or against a provider shall be commenced within two years from the earlier of the date of discovery of a cause of action or the date upon which a cause of action should have been discovered through reasonable diligence. If the cause of action is discovered or discoverable before completion of the improvement or abandonment of construction, the two-year period begins to run upon completion or abandonment.

> (4) Notwithstanding Subsection (3)(b), an action may not be commenced against a provider more than nine years after completion of the improvement or abandonment of construction. In the event the cause of action is discovered or discoverable in the eighth or ninth year of the nine-year period, the injured person shall have two additional years from that date to commence an action.

UTAH CODE § 78B-2-225(3)–(4). Subsections (3)(b) and (4) set the applicable statute of limitations and statute of repose for all the non-warranty claims brought against the defendants—i.e., products liability, negligence, and negligent failure to warn. Indeed, Salt Lake City concedes that subsection (3)(b) applies. These claims, therefore, must be brought within two years of when the causes of action were discovered or should have been discovered through the exercise of reasonable diligence or the completion or abandonment of the project. These causes of action must also be brought within a nine-year statute of repose.

Subsection (3)(a) establishes a limitations period for the warranty claims against the defendants. A warranty action related to an improvement to real property "shall be commenced within six years of the date of completion of the improvement or abandonment of construction." The parties dispute the meaning of this subsection. Salt Lake City argues that subsection (3)(a) is a statute of limitations. Under this theory, the city would have six years from the completion or abandonment of the sewer line project to assert a warranty claim. No other limitation on the time to bring an action would apply. The defendants, on the other hand, argue that subsection (3)(a) is a statute of repose and that a statute of limitations must also be applied to the warranty claims.

In its previous Order, the court disagreed with Salt Lake City's assertion that subsection (3)(a) is a statute of limitations. "A statute of limitations requires a lawsuit to be filed within a specified period of time after a legal right has been violated or the remedy for the wrong committed is deemed waived. A statute of repose bars all actions after a specified period of time has run from the occurrence of some event other than the occurrence of an injury that gives rise to a cause of action." *Berry ex rel. Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 672 (Utah 1985). Generally, a statute of repose period may not be extended, "regardless of usual reasons for 'tolling' the statute." *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 219 (Utah 1984) (quoting RESTATEMENT

(Second) of Torts § 899 cmt. g (1979)). Because subsection (3)(a) ties its six-year limitations period to something other than the violation of a legal right and because it may not be tolled, it "is therefore a statute of repose." *Willis v. DeWitt*, 350 P.3d 250, 253 (Utah Ct. App. 2015).

Salt Lake City argues that both this court and the Utah Court of Appeals in *Willis* erred by categorizing subsection 3(a) as a statute of repose. The city relies upon *Brigham Young University v. Paulsen Construction Co.*, 744 P.2d 1370, 1373 (Utah 1987), which states: "In construction contract cases, an owner's claim of defective construction against a general contractor is generally considered to accrue on the date that construction is completed." Salt Lake City contends that because the accrual date for a warranty claim against a contractor is generally the same as the completion date of the project at issue, subsection 3(a), which is tied to the completion or abandonment of a project, is effectively a statute of limitations.

The court disagrees. Although the date that a legal right has been violated is often the same as the completion date of a project, these two dates do not invariably coincide. Subsection 3(b) recognizes as much. This subsection provides that a non-warranty claim accrues either when it was or should have been discovered or on the completion date of the project, whichever occurs later. Because the limitations period in subsection 3(a) is tied to an event other than the occurrence of the injury, it is a statute of repose. Indeed, when the Utah Supreme Court interpreted the predecessor to Utah Code section 78B-2-225, it held that limitations periods of six years and twelve years "after completion of the improvement or abandonment of construction" were statutes of repose: "Because these periods start to run on the date of completion or abandonment of the improvement without regard to the 'occurrence of an injury that gives rise to a cause of action,' they are statutes of repose." *Craftsman Builder's Supply, Inc. v. Butler Mfg. Co.*, 974 P.2d 1194, 1202 (Utah 1999) (quoting *Berry*, 717 P.2d at 672); *see also Gables & Villas at River Oaks*

*Homeowners Ass'n v. Castlewood Builders, LLC*, 422 P.3d 826, 828 (Utah 2018) (referring to Utah Code section 78B-2-225(3)(a) as a statute of repose). Therefore, identical language found in the current version of this statute marks subsection 3(a) as a statute of repose.

As a statute of repose, subsection 3(a) does not supplant the applicable statute of limitations for Salt Lake City's breach of warranty claims against the defendants. Subsection (9) of the statute states: "This section does not extend the period of limitation or repose otherwise prescribed by law or a valid and enforceable contract." UTAH CODE § 78B-2-225(9). Thus, a statute of limitations "otherwise prescribed by law" must also be applied to warranty claims that are related to an improvement to real property.

b) Statute of Limitations for the Warranty Claims

The court, therefore, must determine the appropriate statute of limitations for the warranty claims. Salt Lake City argues that the six-year statute of limitations for written contracts is the relevant limitations period. *See* UTAH CODE § 78B-2-309(2). Sekisui Australia and Sekisui Americas, on the other hand, contend that the two-year statute of limitations found in the Utah Product Liability Act (UPLA) should be applied to the warranty claims. *See* UTAH CODE § 78B-6-706. The court concludes, however, that the four-year statute of limitations under the Utah Uniform Commercial Code (UCC) applies to the breach of warranty claims. *See* UTAH CODE § 70A-2-725(1).

First, the UCC statute of limitations controls over the statute of limitations for an action on a written obligation. The UCC establishes a four-year statute of limitations for warranties related to a contract for the sale for goods, i.e., items that are movable at the time of identification to the contract for sale. UTAH CODE § 70A-2-725(1) ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."); *see also id.*

8

§ 70A-2-106(1) (defining "contract for sale" as the sale of goods); *id.* § 70A-2-105(1) (defining "goods" to mean "all things . . . which are movable at the time of identification to the contract for sale"). "[W]here the Uniform Commercial Code sets forth a limitation period for a specific type of action, this limitation controls over an older, more general statute of limitations." *Perry*, 681 P.2d at 216. Thus, an action on a written warranty for the sale of goods is controlled by the UCC four-year statute of limitations rather than the general six-year statute of limitations for an action on a written obligation. *Id.* Because the liner sections and the joint seals supplied by the defendants were movable at the time they were sold, any warranties associated with the sale are governed by the statute of limitations found in the UCC.

Salt Lake City argues, however, that the UCC statute of limitations does not apply because there was no contract for sale between the city and any of the defendants. The city entered into a contract with Southwest to install a liner system within an existing sewer line. Salt Lake City eventually agreed to pay Southwest $3,950,107 for materials and labor to perform the work. Southwest then purchased the liner sections from either Sekisui Australia or Sekisui Americas and installed them in the city's sewer line. Salt Lake City contends that because Southwest acted as an intermediary between the seller of the goods and the city, which ultimately took title to the goods, there is not a valid contract for sale between the city and the Sekisui defendants that would trigger the UCC statute of limitations.

The court disagrees. The Utah Supreme Court has indicated that the existence of a middleman does not negate the UCC statute of limitations for a breach of warranty action against the original supplier of a good. In *Perry v. Pioneer Wholesale Supply Co.*, a subcontractor ordered doors from a wholesaler, which then obtained the doors from a manufacturer. 681 P.2d 214, 216 (Utah 1984). The subcontractor sued both the wholesaler and the manufacturer for breach of

warranty, alleging that the doors were defective. *Id.* Despite the fact that the subcontractor did not purchase the doors directly from the manufacturer, the Utah Supreme Court held that the four-year UCC statute of limitations applied to the warranty claim against both the wholesaler and the manufacturer. *Id.* Similarly, the breach of warranty claim against the Sekisui defendants is governed by the UCC statute of limitations even though Salt Lake City purchased the liner sections through an intermediary.

The court also rejects the Sekisui defendants' argument that the two-year statute of limitations under the UPLA should be applied to the warranty claims. As noted above, the UCC provides for a four-year statute of limitations for an "action for breach of any contract for sale." UTAH CODE § 70A-2-725(1). The Utah Supreme Court has held that this statute of limitations applies to a breach of warranty claim to the extent that the plaintiff seeks "economic or breach of contract damages." *Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*, 794 P.2d 11, 16 (Utah 1990). But if the breach of warranty claim is for "personal injury damages or tortious injury," the UCC statute of limitations does not apply. *Id.* at 18; *accord Utah Local Gov't Tr. v. Wheeler Mach. Co.*, 199 P.3d 949, 955–56 (Utah 2008). Instead, in an "action for damages for personal injury, death, or property damage allegedly caused by a defect in a product" the two-year UPLA statute of limitations should be applied. UTAH CODE §§ 78B-6-703(1), -706.

Under its breach of warranty claim, Salt Lake City seeks compensation for the cost to repair or remove and replace the allegedly faulty liner sections sold by the Sekisui defendants. In other words, the city seeks contractual expectation damages—or to be placed in the position it would have occupied had the Sekisui defendants performed their promise to provide liner sections that did not leak. *See Trans-W. Petroleum, Inc. v. United States Gypsum Co.*, 379 P.3d 1200, 1206 (Utah 2016) (defining expectation damages for breach of a contract). These consequential damages for

the alleged breach of the warranty are properly categorized as contract damages governed by the four-year statute of limitations found in the UCC.[1]

### c)  Conclusion

The breach of warranty claims against the defendants are subject to the four-year statute of limitations found in the UCC, UTAH CODE § 70A-2-725(1), and the six-year statute of repose dictated by the improvements to real property statute, UTAH CODE § 78B-2-225(3)(a). The products liability, negligence, and negligent failure to warn claims are governed by the two-year statute of limitations and nine-year statute of repose found in the improvements to real property statute. UTAH CODE § 78B-2-225(3)(b)–(4).

### 2)  The Accrual Date of the Non-Warranty Claims

Utah Code section 78B-2-225(3)(b) provides that a non-warranty claim may accrue either upon discovery of the cause of action or upon the completion or abandonment of the improvement at issue, whichever occurs last:

> All [non-warranty] actions by or against a provider shall be commenced within two years from the earlier of the date of discovery of a cause of action or the date upon which a cause of action should have been discovered through reasonable diligence. If the cause of action is discovered or discoverable before completion of the improvement or abandonment of construction, the two-year period begins to run upon completion or abandonment.

---

[1] Salt Lake City also alleges that the faulty liner sections damaged other facilities owned by the city. A claim for damage to other property seeks tort damages and would not be subject to the UCC statute of limitations. But Salt Lake City does not assert its claim for property damages under its breach of warranty claims. The property damages are properly categorized as a remedy sought under its product liability claims. As discussed above, the product liability claims are subject to the two-year statute of limitations contained in the improvements to real property statute. *See* UTAH CODE § 78B-2-225(3)(b).

Salt Lake City argues that construction work on the sewer line was never completed. The city alleges in its complaint that it discovered leaks in the rehabilitated sewer line on November 29, 2012. In a letter dated December 17, 2012, Salt Lake City notified Southwest of the leaks and demanded that Southwest remedy the leaks. Over the next two and a half years, Southwest and the city formulated a number of plans to fix the leaks and Southwest made one unsuccessful attempt to repair the sewer line. On June 22, 2015, Southwest declined to make any further plans to repair the sewer line. Salt Lake City alleges that because of the leaks in the sewer pipe liner, Southwest never achieved "Substantial Completion" of the project under the terms of the contract between the city and Southwest. Salt Lake City argues that because Southwest never completed the project, it abandoned it one year after it declined to perform any additional design or construction work on the sewer line project. *See* UTAH CODE § 78B-2-225(1)(a) ("'Abandonment' means that there has been no design or construction activity on the improvement for a continuous period of one year."). The city asserts, therefore, that regardless of when it discovered its non-warranty causes of action against the defendants, these claims did not accrue until Southwest abandoned the project on June 22, 2016.

The court disagrees with the city. Because Southwest completed the sewer line rehabilitation project, it was never abandoned. "Completion of the improvement" is a defined term in the improvements to real property statute. As used in this statute, this term means

> the date of substantial completion of an improvement to real property as established by the earliest of:
>
> (i) a Certificate of Substantial Completion;
>
> (ii) a Certificate of Occupancy issued by a governing agency; or
>
> (iii) the date of first use or possession of the improvement.

*Id.* § 78B-2-225(1)(c). Although Salt Lake City may not have issued a Certificate of Substantial Completion, it did begin to use the sewer line. The city attached to its First Amended Complaint the December 17, 2012 letter it sent to Southwest. In the letter, Salt Lake City asserted that it became aware of the leaks in the rehabilitated sewer line because high concentrations of dissolved solids were detected in a sewage treatment plant. The city traced the source of the dissolved solids to the rehabilitated sewer line through tests conducted on November 29, 2012. Salt Lake City further alleged in its Second Amended Complaint that it was difficult to determine whether the liner sections or the joint seals were defective after the city became aware of the leaks because the sewer line was in active use.

In short, the city had begun to use the rehabilitated sewer line to transport sewage to the treatment plant by the time that it conducted the November 29, 2012 tests. Under the terms of the improvements to real property statute, the sewer rehabilitation project had been completed by this date. The court, therefore, rejects Salt Lake City's argument that the accrual date of the non-warranty causes of action was extended until June 22, 2016.[2]

3) The Discovery Rule

Both of the statutes of limitations that govern the claims against the defendants incorporate the discovery rule. Utah Code section 78B-2-225(3)(b) states that an action "shall be commenced within two years from the earlier of the date of discovery of a cause of action or the date upon

---

[2] Salt Lake City also argues that the warranty claims did not accrue until Southwest abandoned the sewer rehabilitation project on June 22, 2016. But this argument  rests upon the city's assertion that Utah Code section 78B-2-225(3)(a) establishes the statute of limitations for the warranty claims. As explained above, the court concludes that the appropriate statute of limitations for these claims is found in Utah Code section 70A-2-725(1), which does not reference the completion or abandonment date of an improvement to real property.

which a cause of action should have been discovered through reasonable diligence." Utah Code

section 70A-2-725(2), on the other hand, contains a partial discovery clause for warranty claims.

That statute provides:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

In the absence of an explicit warranty of future performance, therefore, a warranty claim accrues

upon delivery of the good. If there is an explicit warranty of future performance, the action accrues

when the breach "is or should have been discovered."

The defendants argue that the discovery rule does not toll either of these statutes of

limitations beyond November 29, 2012, the date when Salt Lake City discovered "a significant

defect and leak in the liner" installed by Southwest. HydraTech also argues that the discovery rule

does not apply to the warranty claim against it because it did not make a warranty of future

performance. The court first addresses the general application of the discovery rule to all of the

claims against the defendants before turning to the question of whether HydraTech made an

explicit warranty of future performance that triggered the discovery rule as to this warranty claim.

"As a general rule, a statute of limitations begins to run 'upon the happening of the last

event necessary to complete the cause of action.'" *Russell Packard Dev., Inc. v. Carson*, 108 P.3d

741, 746 (Utah 2005) (citation omitted). One exception to this general rule is the discovery rule,

which delays the commencement of the limitations period until "a plaintiff either discovered or

should have discovered his or her cause of action." *Id.* (citation omitted). Under this standard, "all

that is required to trigger the statute of limitations is sufficient information to put plaintiffs on

notice to make further inquiry if they harbor doubts or questions." *Macris v. Sculptured Software, Inc.*, 24 P.3d 984, 990 (Utah 2001). "Whatever is notice enough to excite attention and put the party on his guard and call for inquiry is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it." *McBroom v. Child*, 392 P.3d 835, 846 (Utah 2016) (citation omitted).

In its prior Order, the court ruled that the results of the November 29, 2012 tests gave rise to a duty to investigate the cause of the leaks in the line and the identity of the manufacturer of any faulty components that may have contributed to the leak. *See Hansen v. Novartis Pharm. Corp.*, No. 2:08-CV-985, 2011 WL 6100848, at *3 (D. Utah Dec. 7, 2011) (the statute of limitations for a claim based upon a defective product "begins to run when the plaintiff discovers, or should have discovered: (1) that she has been injured; (2) the identity of the maker of the allegedly defective product; and (3) that the product had a possible causal relation to her injury") (citing *Aragon v. Clover Club Foods Co.*, 857 P.2d 250, 252–53 (Utah Ct. App. 1993)). Because Salt Lake City did not file its initial complaint against the Sekisui defendants until May 10, 2017 or amend its complaint to include claims against HydraTech until November 8, 2017, the city did not file its claims against the defendants within either the two-year statute of limitations or the four-year statute of limitations as measured from the discovery of the leaks in the sewer line. The court, therefore, dismissed the claims against the defendants and granted Salt Lake City leave "to amend its complaint, if it can, to allege the time and manner of its discovery of its causes of action against the defendants, as well as facts showing an inability to discover the causes of action sooner through the exercise of reasonable diligence."

In response, the city filed its Second Amended Complaint. It added the following allegations relevant to the application of the discovery rule in this case:

The City's ability to inspect and evaluate Southwest's workmanship, the performance of the SPR PE liner and the performance of the HydraTech seals was limited. The sewer line being rehabilitated was and is buried 13 - 18 feet below the surface, was and is in active use, is the primary sewer line servicing downtown Salt Lake City and the Capitol, Avenues and Marmalade districts, and the means to inspect the sewer line is practically limited to CCTV images obtained from inside the sewer line. Given that the three year [sic] material and workmanship warranties and correction period "reset" after Southwest's attempted repairs . . . , the City acted reasonably and diligently by affording Southwest, as required expressly by contract and the implied covenants of good faith and fair dealing, multiple opportunities to inspect, investigate, identify and repair the defects in the Project.

Salt Lake City's new allegations do not comply with the court's prior Order granting leave to amend and do not provide a factual basis for concluding that the city's claims are tolled by the discovery rule. First, Salt Lake City's assertion that its ability to discover the cause of the leaks was "practically limited" to closed circuit television (CCTV) images is insufficient to establish that the discovery rule tolled the statutes of limitations. The city does not contest that the November 29, 2012 discovery of leaks in the rehabilitated sewer line triggered an obligation to investigate any claims the city might have against the manufacturers of components used in the repairs. Thus, Salt Lake City is charged with knowledge of any facts that a reasonable investigation would have uncovered. *McBroom*, 392 P.3d at 846. The city, however, does not allege that it could not have discovered purported defects in the liner sections or the joint seals that contributed to the leaks through the use of CCTV inspections or other reasonable investigation methods. In other words, the Second Amended Complaint did not comply with the court's explicit directive to allege "facts showing an inability to discover the causes of action . . . through the exercise of reasonable diligence."

Second, the amended complaint does not allege the time and manner of the Salt Lake City's discovery of facts suggesting that the defendants were at fault for the leaks. The time and manner of discovery is necessary to determine whether the delay was excused under the discovery rule. The Supreme Court has long recognized this principle: "A general allegation [in a complaint] of ignorance at one time and of knowledge at another are of no effect. If the plaintiff made any particular discovery, it should be stated when it was made, what it was, how it was made, and why it was not made sooner." *Wood v. Carpenter*, 101 U.S. 135, 140–41 (1879) (cited by *Universal C.I.T. Corp. v. Courtesy Motors, Inc.*, 333 P.2d 628, 629 (Utah 1959)). Despite this court's explicit notice to Salt Lake City that it needed to amend its complaint to allege the time and manner of discovery of its claims against the defendants, the Second Amended Complaint contains no such allegation. There is no explanation of why the city had obtained sufficient knowledge of facts to sue the defendants by May 10, 2017 and November 8, 2017 but could not have discovered through reasonable diligence these facts sooner. Accepting that inspection of the liner sections and joint seals was practically limited to CCTV images, there is no proffered justification as to why CCTV images were sufficient to permit the city to sue the defendants when they did but were insufficient to obtain the necessary facts to sue if this technology had been employed and acted upon sooner. In short, without an explanation as to when and how Salt Lake City discovered the information that permitted it to pursue its claims, the city has not shouldered its burden of showing that the discovery rule excuses its untimely claims against the defendants.

Finally, Salt Lake City argues that its neglect in conducting an investigation to discover facts supporting its claims against the defendants should be excused because it relied upon Southwest to discover these facts. In other words, the city argues that it acted reasonably by outsourcing to Southwest its obligation to promptly investigate and discover facts that would allow

the city to sue the Sekisui defendants and HydraTech. The court rejects this argument because it is not supported by the allegations of Salt Lake City's complaint. The December 17, 2012 letter the city sent to Southwest demanded that Southwest repair the leaks discovered in the rehabilitated sewer line; the letter did not include a request for Southwest to discover facts supporting legal claims against the defendants. The Second Amended Complaint alleges that over the subsequent two and a half years, Southwest proposed several plans to repair the line in order to fulfill its contractual obligation to remedy the defective work. The complaint does not allege that Salt Lake City instructed Southwest to investigate potential claims against manufacturers of components used in the rehabilitation project. Thus, the allegations of the Second Amended Complaint do not support the city's argument that it reasonably relied on Southwest to uncover any claims against the defendants.

Moreover, even if Salt Lake City had alleged facts supporting its argument, the city does not provide any caselaw supporting the proposition that it can transfer its discovery obligations to a third party. Although it may be reasonable to employ experts to investigate technical matters, the city cannot fully divest itself of its duty to diligently investigate any claims it might have had against the defendants and wait two and a half years for a third party to investigate.

In short, the court finds that Salt Lake City has not alleged facts that could support the application of the discovery rule to delay the accrual date of its claims against the defendants. *See Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980) (when a complaint pleads dates indicating that a statue of limitations has run, "the plaintiff has the burden of establishing a factual basis for tolling the statute"); *Berneau v. Martino*, 223 P.3d 1128, 1134–35 (Utah 2009) ("[B]efore a statute of limitations may be tolled . . . , the plaintiff must make an initial showing that he did not know nor should have reasonably known the facts underlying the cause of

action in time to reasonably comply with the limitations period."). Thus, Salt Lake City was on inquiry notice of its claims against the defendants more than four years before it asserted them against the defendants on May 10, 2017 and November 8, 2017. Because the city's warranty claim against HydraTech is barred by the four-year statute of limitations, the court need not resolve the issue of whether HydraTech made an express warranty of future performance.

4) Conclusion

The court concludes that all of Salt Lake City's claims against Sekisui Australia, Sekisui Americas, and HydraTech are barred by the applicable statutes of limitations. Because the court has already permitted the city leave to amend its complaint to plead facts supporting its claim that the statutes of limitations should be tolled, further leave to amend would be futile. *See Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009). ("Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." (citation omitted)). The court, therefore, dismisses Salt Lake City's claims against these defendants with prejudice.

## II. MOTION TO DISMISS SOUTHWEST'S CROSSCLAIMS

Southwest's amended crosscomplaint alleges claims against the Sekisui defendants for (1) breach of contract, (2) apportionment of fault under Utah's Liability Reform Act (LRA), and (3) indemnification. Southwest also added a new crossclaim against HydraTech for breach of contract. The Sekisui defendants argue that all three of the crossclaims asserted against them should be dismissed.

*A. Breach of Contract Crossclaim*

Southwest alleges that it entered into a single written agreement with the Sekisui defendants, the terms of which are contained in six separate documents or categories of documents: (1) a November 1, 2008 Sales Agreement between the Sekisui defendants and Southwest; (2) a November 26, 2009 letter from Sekisui Australia to Southwest providing design calculations for the Salt Lake City sewer line project; (3) a 2009 Project Manual, which constitutes the written contract between Salt Lake City and Southwest for the sewer line project; (4) a December 31, 2009 purchase order and subsequent purchase orders from Southwest to Sekisui Americas for liner sections to be used in the project; (5) a November 7, 2012 letter from Sekisui Americas and addressed "To Whom It May Concern" providing a three-year warranty on the liner sections installed in the sewer line project; and (6) a "Sekisui Australia letter confirming Southwest is a licensed [liner section] contractor and that Sekisui would provide on-site support services during installation." Southwest further alleges that the Sekisui defendants breached the terms of three of these documents—the Sales Agreement, the November 26, 2009 letter, and the Project Manual— by failing to provide adequate instructions and performance specifications and by failing to provide a method and system that would be free from leaks.

The Sekisui defendants argue that Southwest's breach of contract crossclaim should be dismissed for two reasons. They first assert that Southwest's complaint fails to state a claim for relief for breach of contract. They further contend that even if Southwest has stated a claim, it is barred by the four-year statute of limitations found in the UCC.

1) Failure to State a Claim

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The complaint must allege more than labels or legal conclusion and its factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

a) The Project Manual and the November 26, 2009 Letter

The Sekisui defendants first argue that Southwest has not alleged facts showing that two of the documents that it relies upon can support its breach of contract crossclaim. The Sekisui defendants assert that the Project Manual cannot support a breach of contract claim against them because it is a contract between Southwest and Salt Lake City. They further contend that the November 26, 2009 letter containing design calculations for the Salt Lake City project is not a contract and therefore cannot be the basis for a breach of contract claim. Southwest responds that these two documents should not be considered separately but should be evaluated as part of the six separate documents or categories of documents that allegedly constitute a single agreement between the parties.

Southwest relies upon *Sacramento Baseball Club, Inc. v. Great N. Baseball Co.*, 748 P.2d 1058 (Utah 1987) and *Bullfrog Marina, Inc. v. Lentz*, 501 P.2d 266 (Utah 1972) to support its contention that the Project Manual and the November 26, 2009 letter should be evaluated as part of a larger written agreement. In *Sacramento Baseball*, the parties entered into two contemporaneous contracts for the sale of a minor league baseball team: a sales agreement and a consultation agreement. 748 P.2d at 1059. Reasoning that "[a]n agreement may be a single contract even though it consists of several writings that the parties have never physically attached to each other," the Utah Supreme Court held that the two separate agreements constituted one contract

21

because they were executed with the single purpose of effectuating the sale of a baseball team. The parties in *Bullfrog Marina* also signed two separate contracts—an employment contract and a lease agreement—dated within two weeks of one another. 501 P.2d at 265. The trial court found that the two contracts should be considered to be one agreement because they were intended to operate together to facilitate the operation of a houseboat rental business. *Id.* at 270. The Utah Supreme Court affirmed, holding that "where two or more instruments are executed by the same parties contemporaneously, or at different times in the course of the same transaction, and concern the same subject matter, they will be read and construed together so far as determining the respective rights and interests of the parties, although they do not in terms refer to each other." *Id.* at 271; *see also Atlas Corp. v. Clovis Nat. Bank*, 737 P.2d 225, 229 (Utah 1987) ("[I]nasmuch as the agreements and the mining deed were executed substantially contemporaneously and are clearly interrelated, they must be construed as a whole and harmonized, if possible.).

Southwest's reliance upon *Sacramento Baseball* and *Bullfrog Marina*, however, is misplaced. Those cases stand for the proposition that separate, signed contracts between two parties can be interpreted together if they are signed contemporaneously or in the course of the same transaction and they concern the same subject matter. But these authorities do not support the rather extraordinary proposition that a party to one contract can be bound by a separate contract between different parties. Thus, the Sekisui defendants are not bound by the Project Manual because it is a written contract between Southwest and Salt Lake City and the Sekisui defendants are not a party to that contract.

Nor has Southwest shown that the November 26, 2009 letter can be integrated into a multi-agreement contract. In *Sacramento Baseball* and *Bullfrog Marina*, two separate contracts were read together as one contract. But Southwest has not alleged any facts indicating that the

letter constituted a contract with Sekisui Australia. The letter simply attaches two pages of technical design calculations for the Salt Lake City sewer line project. There is no evidence of an offer, acceptance, or even recognizable obligations imposed upon the parties to support the formation of a contract. The legal principle that separate contracts can be read as one cannot be used to elevate letters or emails to the status of a binding contract.

Moreover, the Sales Agreement contains an integration clause that prevents other documents from adding terms to this contract. Courts will not allow extrinsic evidence of a separate agreement between the parties in the face of a clear integration clause. *Tangren Family Tr. v. Tangren*, 182 P.3d 326, 331 (Utah 2008). Here, the Sekisui defendants and Southwest signed a November 1, 2008 contract entitled "Customer Specific Terms and Conditions." Paragraph 1 of this agreement states:

> The terms of this Contract shall be comprised of . . . (i) these Customer Specific Terms and Conditions, (ii) the General Terms and Conditions for Sales and Delivery as attached hereto as Exhibit 1, (iii) the Global Price List for Rehabilitation Materials as attached hereto as Exhibit 2, (iv) the Charge List for Training and Technical Support as attached hereto as Exhibit 3, and (v) the Purchase Contract Proposal for a set of [liner section] equipment hereto [sic] as Exhibit 4.

Taken together, these listed documents form the Sales Agreement between the Sekisui Defendants and Southwest. Paragraph 22 of the General Terms and Conditions for Sales and Delivery further states: "These General Terms and Conditions together with the Customer Specific Terms and Conditions and the Global Price List for Rehabilitation Materials, Charge List and, if applicable, equipment purchase or lease contract contain the entire agreement between the Buyer [Southwest] and Seller [the Sekisui defendants] with respect to the subject matter hereof . . . ." In short, the

Sales Agreement contains an integration clause that defines the universe of documents that form the entire agreement. Other documents cannot accrete additional terms to the Sales Agreement.

Accordingly, the Sekisui defendants are entitled to dismissal of the breach of contract crossclaim to the extent that it is based upon breaches of the terms of the Project Manual or the November 26, 2009 letter.[3]

b)  The Sales Agreement

Southwest alleges that the Sekisui defendants breached two provisions of the Sales Agreement. It asserts that the Sekisui defendants breached paragraph 9.2 of the Customer Specific Terms and Conditions, which states that onsite installation training provided by Sekisui employees is available "upon request." Southwest also claims that the Sekisui defendants breached paragraph 13.1 of the General Terms and Conditions, which warrants that the liner sections provided by Sekisui "shall be free from defects in design, materials, and workmanship." The Sekisui defendants concede that the Sales Agreement is a binding contract but argue that the court should conclude as a matter of law that they did not breach either of these provisions.

The Sekisui defendants first argue that they did not breach the installation training provision because Southwest avers in its crosscomplaint that a Sekisui employee was regularly at the jobsite to provide training. The court concludes, however, that it cannot resolve this claim as a matter of law. Arguably, the installation training provision creates a duty to provide *adequate* onsite training. The crosscomplaint does not state that the training provided by the Sekisui representative

---

[3] The Sekisui defendants also argue that they are entitled to dismissal as to the Sales Agreement because, as a matter of law, they did not breach the terms of this agreement. The court need not address this argument because it concludes that the Sales Agreement claim is barred by the applicable statute of limitations.

was effective or adequate. Southwest asserts only that a representative was present. Thus, Southwest has pled a plausible crossclaim for breach of this provision.

Second, the Sekisui defendants argue that they should prevail on the breach of the warranty provision claim because paragraph 13.2 of the General Terms and Conditions explicitly provides that Southwest's "sole and exclusive remedy to any warranty claim shall be limited to the replacement of" defective materials. But this is only an argument that the remedy for breach of this provision is limited; it is not a valid reason to dismiss the crossclaim.

Therefore, the court rejects Southwest's arguments for dismissal of the breach of contract crossclaim to the extent that it is based upon breaches of the training and warranty provisions of the Sales Agreement.

2) Statute of Limitations

The Sekisui defendants argue that even if Southwest stated a claim for breach of contract, this crossclaim is barred by the four-year UCC statute of limitations for contracts for the sale of goods. Southwest concedes that the court can consider the fact that it received the December 17, 2012 letter informing it that Salt Lake City had discovered "a significant defect and leak in the liner" provided by the Sekisui defendants. Southwest argues, however, that the court should apply the six-year limitations period found in Utah Code section 78B-2-225(3)(a), which would make its October 2, 2017 complaint timely. Alternatively, Southwest asserts that the court should apply the six-year statute of limitations for written contracts found in Utah Code section 70A-2-725(1).

a) Utah Code section 78B-2-225(3)(a)

Like Salt Lake City, Southwest asserts that Utah Code section 78B-2-225(3)(a) is a statute of limitations and that it is the only limitations period that may be applied to its breach of contract crossclaim. For the same reasons articulated above, the court rejects this argument.

The Utah Supreme Court has held that a limitations period tied to the completion or abandonment of a construction project is a statute of repose. *Craftsman Builder's Supply, Inc. v. Butler Mfg. Co.*, 974 P.2d 1194, 1202 (Utah 1999) ("Because these periods start to run on the date of completion or abandonment of the improvement without regard to the 'occurrence of an injury that gives rise to a cause of action,' they are statutes of repose." *Craftsman Builder's Supply, Inc. v. Butler Mfg. Co.*, 974 P.2d 1194, 1202 (Utah 1999) (citation omitted). Because section 78B-2-225(3)(a) runs upon completion or abandonment of the relevant improvement to real property, it is likewise a statute of repose. *See Gables & Villas at River Oaks Homeowners Ass'n v. Castlewood Builders, LLC*, 422 P.3d 826, 828 (Utah 2018) (referring to Utah Code section 78B-2-225(3)(a) as a statute of repose); *Willis v. DeWitt*, 350 P.3d 250, 253 (Utah Ct. App. 2015) (holding that Utah Code section 78B-2-225(3)(a) is a statute of repose). The court, therefore, must apply the appropriate statute of limitations to the breach of contract crossclaim in addition to this statute of repose. *See* UTAH CODE § 78B-2-225(9) ("This section does not extend the period of limitation or repose otherwise prescribed by law or a valid and enforceable contract.").

b) The Appropriate Statute of Limitations

The parties dispute which statute of limitations to apply to the breach of contract crossclaim. Southwest argues that the six-year statute of limitations for written contracts should be applied. *See* UTAH CODE § 78B-2-309(2). The Sekisui defendants, on the other hand, assert that the four-year UCC statute of limitations for a contract for the sale of goods should govern. *See id.* § 70A-2-725(1).

In order to determine which of these statues of limitations applies to Southwest's breach of contract crossclaim, the court must determine whether the Sales Agreement is a contract for goods or for services. The UCC statute applies to the former, while the general statute of limitations for

a written contract applies to the latter. The complicating factor in this case is that the Sales Agreement is for both goods and services. The Sales Agreement expressly incorporates into the agreement individual purchase orders of liner materials made by Southwest. This portion of the Sales Agreement is for goods. The contract also required Southwest employees to complete a two-week training program for the installation of Sekisui materials and provides that Southwest may purchase additional onsite training from the Sekisui defendants. This portion of the contract is for services. Thus, the Sales Agreement is a classic example of a mixed contract for both goods and services.

Utah employs the predominate purpose test to determine whether a mixed contract is controlled by the UCC or not. In *Utah Local Government Trust v. Wheeler Machine Co.*, a city entered into a mixed contract with a contractor, which was obligated to provide two diesel generators as well as installation and testing services. 199 P.3d 949, 950 (Utah 2008). The city sued the contractor after one of the installed generators caught fire, damaging the city's building and equipment. In determining whether the contract at issue in that case was for a product, the Utah Supreme Court looked to UCC law and the predominant purpose test, holding that "[w]hen a mixed contract is presented, it is necessary for a court to review the factual circumstances surrounding the negotiation, formation and contemplated performance of the contract to determine whether the contact is predominantly or primarily a contract for the sale of goods," in which case the UCC would control. *Id.* at 956 (quoting *Neilson Bus. Equip. Ctr., Inc. v. Italo V. Monteleone, M.D., P.A.*, 524 A.2d 1172, 1174 (Del. 1987)) (alteration in original). Alternatively, "if service predominates, and the transfer of title to personal property is only an incidental feature of the transaction, the contract does not fall within the ambit of [the UCC]." *Id.* (citation omitted) (alteration in original).

The Delaware caselaw quoted in *Utah Local Government Trust* notes the existence of an additional consideration when applying the predominate purpose test. The Utah Supreme Court relied on a Delaware Supreme Court case, *Neilson Business Equipment Center, Inc. v. Italo V. Monteleone, M.D., P.A.*, 524 A.2d 1172 (Del. 1987), when it adopted the primary purpose test. *Utah Local Gov't Tr.*, 199 P.3d at 956. *Nelson Business Equipment*, in turn, cites an earlier Delaware case, *Glover School & Office Equipment Co. v. Dave Hall, Inc.*, 372 A.2d 221 (Del. Super. Ct. 1977). *Glover* held:

> Where a mixed contract is involved, it is necessary that the Court review the factual circumstances surrounding the negotiation, formation and contemplated performance of the contract to determine whether the contract is predominantly or primarily a contract for sale of goods or for services. *If the cause of action centers exclusively on the materials portion or the services portion of the contract, the determination may rest upon that fact.*

*Id.* at 223 (emphasis added); *see also Foster v. Colorado Radio Corp.*, 381 F.2d 222, 226 (10th Cir. 1967) (analyzing a contract for the sale of both goods and non-goods and applying the UCC only to the portion of the contract involving goods). Thus, where a mixed contract contains provisions that are attributable to either the goods portion of the contract or the services portion of the contact, the provision sued upon can often be the determining factor as to whether the UCC should be applied or not. If the plaintiff sues on a goods provision, the UCC applies; if the plaintiff sues on a provision that clearly deals with services, the UCC does not apply.

Here, Southwest asserts breach of contract claims based upon two provisions of the Sales Agreement: paragraph 9.2 and paragraph 13.1. Paragraph 9.2 is plainly a services provision. It governs requests for Sekisui to provide onsite training services to Southwest. Paragraph 13.1, on the other hand, is a goods provision. It provides a warranty for the liner sections supplied by the Sekisui defendants to Southwest.

Because the Sales Agreement is distinctly divisible between services provisions and goods provisions, the court concludes that the provision forming the basis of the claim determines whether the UCC statute of limitations applies or not. Since the paragraph 9.2 claim is based upon a services provision, the UCC does not apply and the six-year statute of limitations for written contracts governs this claim. The paragraph 9.2 claim is therefore not barred by the statute of limitations because Southwest filed its action within this six-year period. The paragraph 13.1 warranty claim, on the other hand, is based upon a goods provision of the Sales Agreement. Thus, the four-year UCC statute of limitations applies to this claim. And since Southwest sued the Sekisui defendants more than four years after its breach of contract action accrued, the paragraph 13.1 claim is barred by this statute of limitations.

In short, the court dismisses the paragraph 13.1 claim as untimely under the UCC statute of limitations. But the court finds that the breach of contract claim arising under paragraph 9.2 is timely and so denies dismissal as to this claim.

3) Conclusion

The court concludes that Southwest's claims that the Sekisui defendants breached the terms of the Project Manual and the November 26, 2009 letter fail as a matter of law. The court further determines that Southwest's claim that the Sekisui defendants breached paragraph 13.1 of the Sales Agreement is barred by the UCC statute of limitations. But Southwest's breach of contract claim arising under paragraph 9.2 of the Sales Agreement is not barred by the applicable six-year statute of limitations for written contracts. The court, therefore, denies the Sekisui defendants' motion to dismiss the breach of contract crossclaim because one of Southwest's theories survives.

*B. Apportionment of Fault Crossclaim*

Salt Lake City asserts three causes of action against Southwest: breach of contract, breach of the American Public Works Association (APWA) warranty, and breach of the workmanship warranty. Southwest, in turn, asserts an apportionment of fault crossclaim against Sekisui Australia, Sekisui Americas, and HydraTech. This crossclaim seeks to allocate to these defendants at least a portion of any liability Southwest may incur for Salt Lake City's breach of contract and breach of warranty claims.

Southwest's apportionment of fault crossclaim is based on the Utah Liability Reform Act (LRA), which permits a defendant to require the factfinder to allocate damages to other individuals or entities based upon "the percentage or proportion of fault attributable" to the other individuals or entities. UTAH CODE § 78B-5-819(1). "Fault" is a defined by the LRA to mean

> any actionable breach of legal duty, act, or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all its degrees, comparative negligence, assumption of risk, strict liability, breach of express or implied warranty of a product, products liability, and misuse, modification, or abuse of a product.

*Id.* § 78B-5-817(2).

The Sekisui defendants argue that the LRA can be used to apportion fault only for tort claims, not contract claims. They further assert that because Salt Lake City's claims against Southwest are contract claims, the apportionment of fault crossclaim should be dismissed. The court agrees.

The Utah Supreme Court has explicitly rejected the notion that the LRA can be extended to "breach of contract actions and actions for breach of statutory duties since those actions also

involve an 'actionable breach of legal duty.'" *Graves v. N. E. Servs., Inc.*, 345 P.3d 619, 635 n.10

(Utah 2015) (citation omitted). In so holding, the court reasoned that

> [t]he Liability Reform Act is all about tort law. Perhaps its principle
> of "fault" could conceivably be read, in the abstract, to tread into
> other legal fields. But we don't read statutes in the abstract. We read
> them in context. And given its context we think the better
> construction would limit its principle of fault to tortious acts or
> omissions, and not to exten[d] to breaches of duty rooted in contract
> or statute.

*Id*. Thus, the LRA does not permit the allocation of fault for Salt Lake City's breach of contract

claim against Southwest.

Similarly, fault for Salt Lake City's breach of warranty claims against Southwest may not

be allocated because these causes of action sound in contract. A breach of warranty cause of action

may denote either a "tort-type action" or a "contract-type action." *Davidson Lumber Sales, Inc. v.*

*Bonneville Inv., Inc.*, 794 P.2d 11, 14 (Utah 1990). The term "warranty" has been used to describe

tort actions for strict products liability.[4] *Id*; *see also Bylsma v. R.C. Willey*, 416 P.3d 595, 601 n.10

(Utah 2017) (holding that a breach of warranty claim for personal injuries caused by an allegedly

defective foot massager was functionally equivalent to a strict products liability claim under the

LRA). A breach of warranty claim can also denote a claim for contract damages. *Davidson Lumber*,

794 P.2d at 14. In this case, Salt Lake City alleges that Southwest breached the APWA warranty,

which guaranteed that "all work will be in accordance with the Contract Documents and will not

be defective" and the workmanship warranty, which warranted "against any shortcomings in the

---

[4] The LRA lists "breach of express or implied warranty of a product" as an example of a cause of
action for which fault may be allocated. UTAH CODE § 78B-5-819(1). However, given the Utah
Supreme Court's pronouncement in *Graves* that the LRA applies only to tort claims, this reference
to a breach of a product warranty claim must be limited to "tort-type" breach of warranty claims
that are akin to strict products liability claims.

workmanship." These two warranties relate to workmanship, not products. Thus, the breach of warranty claims based upon these warranties cannot be interpreted as tort claims akin to claims for strict products liability. Instead, these breach of warranty claims seek contract damages for an alleged failure to provide effective workmanship. Because these breach of warranty claims sound in contract, the LRA does not permit Southwest to allocate fault for these claims to a third party. *See Graves*, 345 P.3d at 635 n.10.

The court, therefore, grants the Sekisui defendants' motion to dismiss the allocation of fault crossclaim.

### C. *Indemnification Crossclaim*

Finally, Southwest asserts an indemnification crossclaim against Sekisui Australia, Sekisui Americas, and HydraTech. "In actions for indemnity, courts universally require proof of three elements: (1) the payor (prospective indemnitee) must discharge a legal obligation the payor owes to a third person; (2) the prospective indemnitor must also be liable to the third person; and (3) as between the claimant payor and the prospective indemnitor, the obligation ought to be discharged by the indemnitor." *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 218 (Utah 1984).

The Sekisui defendants argue that the court should dismiss the indemnification crossclaim because a provision of the Sales Agreement requires Southwest to indemnify the Sekisui defendants. It provides:

> The Buyer [Southwest] shall hold harmless and indemnify the Seller [the Sekisui defendants] its officers, employees and agents from and against any claims, demands, or causes of action whatsoever, including without limitation those arising on account of any injury or death of persons or damage to property caused by or arising out of or resulting from the exercise or practice of the license granted hereunder by the Buyer.

The court disagrees with the Sekisui defendants' reading of the indemnification clause. While this provision may require Southwest to indemnify the Sekisui defendants from liability, it does not prohibit the reverse scenario: a claim that the Sekisui defendants should indemnify Southwest. The Sales Agreement is silent on the question of whether the Sekisui defendants can be required to indemnify Southwest. The court concludes, therefore, that the terms of the Sales Agreement do not bar the indemnification crossclaim and denies the Sekisui defendants' motion to dismiss it on this ground.

### D.  Conclusion

The court denies the motion to dismiss to the extent that the Sekisui defendants seek dismissal of the breach of contract and indemnification crossclaims. The court grants the motion to dismiss to the extent that the Sekisui defendants seek dismissal of the apportionment of fault crossclaim.

## III.    MOTIONS TO CERTIFY QUESTIONS TO THE UTAH SUPREME COURT

Both Salt Lake City and Southwest also filed motions to certify to the Utah Supreme Court questions regarding the appropriate statute of limitations to apply to the breach of warranty claims and breach of contract crossclaims in this case. Salt Lake City requests that the following questions be certified:

1.  Is Utah Code Ann. § 78B-2-225(3)(a) a statute of limitations?

2.  If Utah Code Ann. § 78B-2-225(3)(a) is not a statute of limitations, what statute of limitations governs the breach of express warranty claims of an owner of an improvement to real property against the manufacturers of a product incorporated into that improvement?

Southwest requests that a single question be certified:

1. Is Utah Code Ann. § 78B-2-225(3)(a) the sole limitations and repose period to be applied to actions described therein, or should courts apply other applicable statutes of limitations along with it?

The court denies the motions to certify these questions to the Utah Supreme Court.

First, the motions to certify are untimely. Sekisui Australia, Sekisui Americas, and HydraTech argued in their first motions to dismiss that the four-year UCC statute of limitations should be applied to Salt Lake City's breach of warranty claims. The Sekisui defendants also raised a similar statute of limitations issue in their first motion to dismiss Southwest's breach of contract crossclaim. Instead of asking this court to certify questions of law regarding the appropriate statute of limitations to apply to the claims and crossclaims, both Salt Lake City and Southwest argued that the court should rule in their favor and apply the six-year limitations period found in Utah Code section 78B-2-225(3)(a). Only after the court interpreted the relevant statutes and ruled against them did Salt Lake City and Southwest ask this court to certify to the Utah Supreme Court the same questions they had asked this court to decide. The appropriate time to request certification was before this court ruled on the statute of limitations question. Litigants may not ask this court to decide an issue and then ask for certification only after receiving a disappointing answer. *See Am. Nat'l Prop. & Cas. Co. v. McNeely*, No. 1:16CV7DAK, 2016 WL 8787293, at *1 (D. Utah Nov. 22, 2016) ("A party cannot assert that Utah law is clear on an issue and then seek redress from another court when it receives an unfavorable ruling."); *Utah ex rel. Div. of Forestry, Fire & State Lands v. United States*, 335 F. Supp. 2d 1319, 1324 (D. Utah 2004) ("The proper time for this motion [to certify] would have been at the time the court was considering the parties' motions . . . .").

Second, the motions to certify do not pose questions on unsettled areas of Utah law. Under Rule 41(a) of the Utah Rules of Appellate Procedure, the "Utah Supreme Court may answer a question of Utah law certified to it by a court of the United States when requested to do so by such certifying court acting in accordance with the provisions of this rule if the state of the law of Utah applicable to a proceeding before the certifying court is uncertain." The first question proposed by Salt Lake City is whether Utah Code section 78B-2-225(3)(a), which ties its six-year limitations period to "the date of completion of the improvement or abandonment of construction," is a statute of limitations or a statute of repose. In examining a predecessor to this statue, the Utah Supreme Court held that the limitations period tied to the completion or abandonment of a construction project was a statute of repose. *Craftsman Builder's Supply, Inc. v. Butler Mfg. Co.*, 974 P.2d 1194, 1202 (Utah 1999) ("Because these periods start to run on the date of completion or abandonment of the improvement without regard to the 'occurrence of an injury that gives rise to a cause of action,' they are statutes of repose." (citation omitted)). Thus, it is settled that a limitations period tied to completion or abandonment of an improvement, such as section 78B-2-225(3)(a), is a statute of repose. *See Gables & Villas at River Oaks Homeowners Ass'n v. Castlewood Builders, LLC*, 422 P.3d 826, 828 (Utah 2018) (referring to Utah Code section 78B-2-225(3)(a) as a statute of repose); *Willis v. DeWitt*, 350 P.3d 250, 253 (Utah Ct. App. 2015) (holding that Utah Code section 78B-2-225(3)(a) is a statute of repose).

The second question proposed by Salt Lake City—which statute of limitations should be applied to a written warranty on goods incorporated into an improvement to real property—has also been settled by the Utah Supreme Court. In *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 216 (Utah 1984), a subcontractor asserted breach of warranty claims against a wholesaler and a manufacturer, alleging that doors that the subcontractor had installed in a medical center were

defective. The Utah Supreme Court held that the breach of warranty claims based upon the installed doors were governed by the UCC statute of limitations rather than the general statute of limitations for written contracts. *Id.* ("[W]here the Uniform Commercial Code sets forth a limitation period for a specific type of action, this limitation controls over an older, more general statute of limitations.").

Southwest's proposed certification question sidesteps the issue of whether section 78B-2-225(3)(a) is a statute of repose or a statute of limitations and asks instead whether it is the only limitations period that should be applied to its breach of contract crossclaim. Although the Utah Supreme Court has not addressed this question, the Utah Legislature has. Subsection (9) of this statute states that "[t]his section does not extend the period of limitation or repose otherwise prescribed by law or a valid and enforceable contract." In other words, if a shorter limitations period is "otherwise prescribed by law," courts must apply the shorter limitations period in addition to section 78B-2-225(3)(a).

In short, the court denies both Salt Lake City's and Southwest's motions to certify because they are untimely and because they do not present novel legal questions.

## CONCLUSION AND ORDER

The court orders as follows:

1. The court GRANTS Sekisui Australia's motion to dismiss the causes of action asserted against it in Salt Lake City's Second Amended Complaint. [Docket 80.] Dismissal is with prejudice.

2. The court GRANTS Sekisui Americas' motion to dismiss the causes of action asserted against it in Salt Lake City's Second Amended Complaint. [Docket 79.] Dismissal is with prejudice.

3. The court GRANTS HydraTech's motion to dismiss the causes of action asserted against it in Salt Lake City's Second Amended Complaint. [Docket 84.] Dismissal is with prejudice.

4. The court GRANTS IN PART AND DENIES IN PART Sekisui Australia's and Sekisui Americas' motion to dismiss the crossclaims asserted against them in Southwest's Amended Crosscomplaint. [Docket 105.] The court grants the motion to the extent that the Sekisui defendants seek dismissal of the apportionment of fault crossclaim. Dismissal is with prejudice. The court denies the motion to the extent that the Sekisui defendants seek dismissal of the breach of contract and indemnification crossclaims.

5. The court DENIES Salt Lake City's and Southwest's motions to certify questions to the Utah Supreme Court. [Docket 93, 121.]

DATED September 26, 2019.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

37