IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SALT LAKE CITY CORPORATION;<br><br>Plaintiff;<br><br>v.<br><br>SEKISUI SPR AMERICAS, LLC; SEKISUI RIB LOC AUSTRALIA PTY LTD.; SOUTHWEST PIPELINE AND TRENCHLESS CORP.; SAFECO INSURANCE COMPANY OF AMERICA, INC.; HYDRATECH ENGINEERED PRODUCTS, LLC; and DOES 1–10;<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING HYDRATECH'S MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART SEKISUI'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Case No. 2:17-cv-01095-JNP-CMR<br><br>District Judge Jill N. Parrish |

Salt Lake City Corporation hired Southwest Pipeline and Trenchless Corporation (Southwest) to rehabilitate a sewer line. Southwest used components supplied by Sekisui Rib Loc Australia Pty Ltd. (Sekisui Australia), Sekisui SPR Americas, LLC (Sekisui Americas), and HydraTech Engineered Products, LLC (HydraTech) to complete the project. Salt Lake City subsequently sued Southwest, Sekisui Australia, Sekisui Americas, and HydraTech, alleging that the rehabilitated sewer line was leaking. Southwest filed crossclaims against Sekisui Australia, Sekisui Americas, and HydraTech for breach of contract, apportionment of fault, and indemnification.

Before the court is HydraTech's motion to dismiss Southwest's crossclaims against it and Sekisui Australia's and Sekisui America's (the Sekisui defendants') motion for judgment on the pleadings on Southwest's crossclaims against them. ECF Nos. 149, 152. The court GRANTS

HydraTech's motion to dismiss and GRANTS IN PART and DENIES IN PART the Sekisui defendants' motion for judgment on the pleadings.

## BACKGROUND

Salt Lake City requested bids to rehabilitate a sewer line by installing a liner within the existing pipe. This "trenchless" method of rehabilitating the sewer line avoids the need to dig up and replace the pipe. Southwest won the bid. Sekisui Australia and Sekisui Americas sold their proprietary liner product to Southwest for use in the project. HydraTech supplied joints that were used to connect and seal the sections of pipe liner.

Sometime in late 2012, Southwest finished the sewer line rehabilitation project and Salt Lake City began to use the rehabilitated line to transport sewage to a treatment plant. On December 17, 2012, the city sent a letter to Southwest. The letter stated that on November 29, 2012, Salt Lake City had tested the rehabilitated section of sewer line and had discovered "a significant defect and leak in the liner." The letter stated that the defect was "allowing 1.0 to 1.5 million gallons per day . . . groundwater infiltration with extremely high total dissolved solids . . . into the pipeline." The letter demanded that Southwest "correct the defective work" by February 28, 2013. Over the next two and a half years, Southwest and the city formulated a number of plans to fix the leaks and Southwest made one unsuccessful attempt to repair the sewer line. On June 22, 2015, Southwest declined to make any further plans to repair the sewer line.

On May 10, 2017, Salt Lake City sued Sekisui Australia and Sekisui Americas. On November 8, 2017, the city amended its complaint to add claims against Southwest and HydraTech. Meanwhile, Southwest sued Sekisui Australia and Sekisui Americas on October 2, 2017. That lawsuit was consolidated with crossclaims that Southwest had asserted in this lawsuit. On December 7, 2018, Southwest filed its operative crosscomplaint against the Sekisui defendants

2

and HydraTech. Southwest asserted crossclaims for breach of contract, apportionment of fault, and equitable indemnification against the cross-defendants.

The court subsequently granted motions to dismiss all of Salt Lake City's claims against the Sekisui defendants and HydraTech on statute of limitations grounds. The court also dismissed Southwest's apportionment of fault crossclaim and dismissed in part its breach of contract crossclaim against the Sekisui defendants.

HydraTech now moves to dismiss Southwest's crossclaims against it for breach of contract, apportionment of fault, and indemnification. The Sekisui defendants move for a judgment on the pleadings on what remains of the breach of contract crossclaim and the indemnification crossclaim against them.

## LEGAL STANDARDS

Dismissal of a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate where the plaintiff fails to state a claim upon which relief can be granted. When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The complaint must allege more than labels or legal conclusion and its factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Courts apply this same standard to a motion for judgment on the pleadings under Rule 12(c). *Brown v. Montoya*, 662 F.3d 1152, 1160 n.4 (10th Cir. 2011).

## ANALYSIS

### I.     HYDRATECH'S MOTION TO DISMISS

*A. Breach of Contract*

Southwest's crosscomplaint alleges that HydraTech had warranted that its product would perform properly if installed in the Salt Lake City sewer line refurbishment project. Southwest asserts that HydraTech breached this warranty by supplying defective parts.

For the same reasons stated in the court's orders dismissing Salt Lake City's breach of contract claims, ECF No. 71 at 15–24 and ECF No. 136 at 4–19, HydraTech argues that the breach of contract crossclaim against it should be dismissed because Southwest filed the crossclaim after the statute of limitations had run. On December 17, 2012, Salt Lake City notified Southwest that the refurbished sewer line had a significant leak.[1] HydraTech asserts that this notice triggered the four-year statute of limitations found in the Utah Uniform Commercial Code (UCC). *See* UTAH CODE § 70A-2-725(1). According to HydraTech, this statute of limitations ran before Southwest initiated its breach of contract counterclaim.[2]

---

[1] In its answer to Salt Lake City's complaint and in its countercomplaint against the city, Southwest acknowledged that it received notice of the leak on this date.

[2] Southwest sued the Sekisui defendants on October 2, 2017. It filed a crossclaim against HydraTech in this lawsuit on May 4, 2018. Southwest then amended his crossclaims to include a breach of contract crossclaim against HydraTech on December 7, 2018. Because all three of these dates are more than four years after December 17, 2012, the court need not decide whether the breach of contract crossclaim against HydraTech relates back to either the filing of the initial crossclaims or the filing of the initial lawsuit against the Sekisui defendants.

Southwest argues that its breach of contract counterclaim is timely for two reasons. First, Southwest asks the court to reconsider its prior rulings that the four-year UCC statute of limitations applies to the breach of contract claims asserted in this case. Southwest argues that the six-year period of limitations found in the improvements to real property statue should be applied instead. This statue provides: "An action by or against a provider [any legal entity contributing to the construction of an improvement] based in contract or warranty shall be commenced within six years of the date of completion of the improvement or abandonment of construction." UTAH CODE § 78B-2-225(3)(a) (2012).[3] Focusing exclusively on subsections (2) and (3) of this statute, Southwest argues that this six-year statute of repose is the only limitations period that the Utah Legislature intended to apply to construction defect cases.

If the statute consisted of only the language in subsection (3)(a), perhaps Southwest would have a compelling argument. But Southwest completely ignores subsection (9) of the improvements to real property statute, which states: "This section does not extend the period of limitation or repose otherwise prescribed by law or a valid and enforceable contract." *Id*. § 78B-2-225(9). This subsection was the linchpin of the court's previous rulings that the four-year UCC statute of limitations—i.e., a "period of limitation or repose otherwise prescribed by law"— also applied to the breach of contract claims and crossclaims at issue in this case. Because Southwest does not address the language of subsection (9), it has not convinced the court that its prior rulings on this issue are erroneous. The court concludes that the UCC statute of limitations applies to the breach of contract crossclaim against HydraTech.

---

[3] An amended version of this statute went into effect on May 12, 2020. The court cites the version of the statute in effect when the breach allegedly occurred.

5

Second, Southwest argues that dismissal of the breach of contract crossclaim is not appropriate because there is a question of fact as to when the crossclaim accrued. Quoting *Brigham Young University v. Paulsen Construction Co.*, 744 P.2d 1370, 1373 (Utah 1987), it contends that "[i]n construction contract cases, an owner's claim of defective construction against a general contractor is generally considered to accrue on the date that construction is completed." Southwest asserts that there is a dispute as to when the sewer line rehabilitation project was completed and, therefore, the court may not resolve the statute of limitations issue at this stage of the litigation.

But the general principle outlined in *Brigham Young University* does not apply here. First, this general principle was articulated in the context of a claim brought by a landowner against a general contractor. In this case, a general contractor is asserting a claim against the supplier of a component used in a construction project. Second, *Brigham Young University* does not apply because that case did involve or interpret the UCC statute of limitations. This statute contains a provision that specifically addresses when a claim governed by the UCC accrues:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

UTAH CODE § 70A-2-725(2). By statute, Southwest's crossclaim accrued either upon delivery of the joint seals or, if the claim is based upon an explicit warranty of future performance, when the breach was or should have been discovered. This accrual provision trumps the general statement found in *Brigham Young University*.

On December 17, 2012, Salt Lake City notified Southwest that the refurbished sewer line had a significant leak. The city stated that it expected Southwest to remedy the problem. As the

6

court discussed in its prior ruling, ECF No. 136 at 13–19, this knowledge triggered a duty to investigate whether the leak was caused by defective parts supplied by HydraTech. *See Macris v. Sculptured Software, Inc.*, 24 P.3d 984, 990 (Utah 2001). ("[A]ll that is required to trigger the statute of limitations is sufficient information to put plaintiffs on notice to make further inquiry if they harbor doubts or questions."). Southwest has not pled any facts suggesting that such an investigation would not have revealed HydraTech's potential liability for the leaks. *See Berneau v. Martino*, 223 P.3d 1128, 1134–35 (Utah 2009) ("[B]efore a statute of limitations may be tolled . . . , the plaintiff must make an initial showing that he did not know nor should have reasonably known the facts underlying the cause of action in time to reasonably comply with the limitations period."). Thus, even assuming that HydraTech made an explicit warranty of future performance, Southwest has not carried its burden of showing that it should not have discovered HydraTech's alleged breach of the warranty soon after it received notice of the leak.

Accordingly, the court concludes that the four-year UCC statute of limitation ran before Southwest filed its breach of contract crossclaim. The court dismisses this crossclaim. Because Southwest has already had an opportunity to amend its crossclaims in light of the court's prior ruling on the Sekisui defendants' nearly identical statute of limitations arguments, the court finds that leave to amend would be futile. Therefore, dismissal is with prejudice.

    *B. Apportionment*

Southwest also asserted a crossclaim for apportionment of fault pursuant to Utah's Liability Reform Act (LRA). *See* UTAH CODE § 78B-5-819. In this crossclaim, Southwest seeks to allocate to HydraTech liability for the claims Salt Lake City has asserted against Southwest.

Salt Lake City asserted three causes of action against Southwest: breach of contract, breach of the American Public Works Association (APWA) warranty, and breach of the workmanship

7

warranty. The court has already ruled that all of these claims sound in contract. ECF No. 136 at 31–32. But the Utah Supreme Court has explicitly rejected the notion that the LRA can be extended to "breach of contract actions and actions for breach of statutory duties since those actions also involve an 'actionable breach of legal duty.'" *Graves v. N. E. Servs., Inc.*, 345 P.3d 619, 635 n.10 (Utah 2015) (citation omitted). In so holding, the court reasoned that

> [t]he Liability Reform Act is all about tort law. Perhaps its principle of "fault" could conceivably be read, in the abstract, to tread into other legal fields. But we don't read statutes in the abstract. We read them in context. And given its context we think the better construction would limit its principle of fault to tortious acts or omissions, and not to exten[d] to breaches of duty rooted in contract or statute.

*Id*.

Because the LRA does not permit the allocation of fault for Salt Lake City's contract claims against Southwest, the court dismisses the allocation of fault crossclaim against HydraTech. This legal impediment renders any amendment futile. Accordingly, dismissal is with prejudice.

C. *Indemnification*

Finally, Southwest asserts a crossclaim for equitable indemnification against HydraTech. Southwest asserts that any obligation that it may owe to Salt Lake City should be discharged by HydraTech.

HydraTech moves to dismiss the equitable indemnification crossclaim, arguing that Southwest cannot satisfy all of the elements of such a claim. "In actions for indemnity, courts universally require proof of three elements: (1) the payor (prospective indemnitee) must discharge a legal obligation the payor owes to a third person; (2) the prospective indemnitor must also be liable to the third person; and (3) as between the claimant payor and the prospective indemnitor, the obligation ought to be discharged by the indemnitor." *Perry v. Pioneer Wholesale Supply Co.*,

8

681 P.2d 214, 218 (Utah 1984). HydraTech contends that Southwest cannot satisfy the second element of this test because HydraTech (the prospective indemnitor) is not liable to Salt Lake City (the third person). The court dismissed all of Salt Lake City's claims against HydraTech on statute of limitations grounds, precluding any liability on the part of the prospective indemnitor.

Southwest does not contest that HydraTech cannot be liable to Salt Lake City. Instead it argues that it can satisfy the second element of the equitable indemnification crossclaim so long as it can show HydraTech owed a duty to Salt Lake City, regardless of whether liability had been extinguished by the statute of limitations. Southwest relies upon a single sentence found in a Utah Court of Appeals opinion: "Under the second element of equitable indemnity, there must be sufficient facts in the record to support the finding that Galbraith & Green [the prospective indemnitor] *owed a duty* to Welch [the third party]." *Salt Lake City Sch. Dist. v. Galbraith & Green, Inc.*, 740 P.2d 284, 288 (Utah Ct. App. 1987) (emphasis added).

Southwest's argument is unpersuasive. The Utah Supreme Court stated that liability, rather than the existence of a duty, is required to satisfy the second element of the test. *Perry*, 681 P.2d at 218. The Utah Court of Appeals cannot override the Utah Supreme Court. Taken in context, moreover, it is clear that the court of appeals did not hold that the existence of a duty, in the absence of liability, is sufficient to satisfy the second element of equitable indemnification. In *Galbraith & Green*, the district court had found that the defendant was liable for equitable indemnification. 740 P.2d at 287. On appeal, the defendant argued that the second element of equitable indemnification was not met because it could not be liable to the third party as it did not owe a duty to the third party. *See id.* at 288. Thus, when it stated that "there must be sufficient facts in the record to support the finding that Galbraith & Green owed a duty to Welch," the Utah Court of Appeals was merely

9

framing the issue before it. *Id*. The court of appeals did not hold that that the existence of a duty, by itself, is sufficient to satisfy the second equitable indemnification element.

Because HydraTech cannot be liable to Salt Lake City, Southwest cannot prove the second element of its equitable indemnification crossclaim. The court dismisses this crossclaim with prejudice.

## II. THE SEKISUI DEFENDANTS' MOTION FOR JUDGEMENT ON THE PLEADINGS

### A. Breach of Contract

#### 1) The Court's Prior Order on the Sekisui Defendant's Motion to Dismiss

Southwest asserted a breach of contract crossclaim against the Sekisui defendants, alleging that they violated two provisions of a licensing agreement between the parties: (1) section 9.2, which permitted Southwest to request additional installation training from the Sekisui defendants and (2) section 13.1, which warranted that the liner sections purchased by Southwest would be free from defects. In a prior motion, the Sekisui defendants moved to dismiss the breach of contract crossclaim on statute of limitations grounds.

One of the issues in the prior motion was whether Southwest's breach of contract crossclaim was governed by the four-year UCC statute of limitations for a claim based on contract for the sale of goods or whether the crossclaim was governed by the six-year statute of limitations for a claim based on a written contract for services. The court determined that the licensing agreement was a hybrid contract for both goods and services and noted that in a similar context, the Utah Supreme Court had adopted the primary purpose test to determine the nature of a hybrid transaction. In *Utah Local Government Trust v. Wheeler Machine Co.*, 199 P.3d 949, 950 (Utah 2008), a city entered into a hybrid contract for goods and services with a contractor. The contract

10

required the contractor to provide two diesel generators and installation and testing services for the equipment. *Id.* The city sued the contractor after one of the generators caught fire, damaging the city's building and equipment. *Id.* at 950–51. The district court granted summary judgment in favor of the contractor, and the city appealed. *Id.* at 951. The question presented to the Utah Supreme Court was whether the city had asserted a product liability cause of action governed by the two-year statute of limitations for such a claim. *Id.* More specifically, the issue was "whether a transaction that includes both a tangible item and a service will be treated as the sale of a product under the [Products Liability] Act." *Id.* at 952.

The Utah Supreme Court held that the predominant purpose test was the appropriate tool for determining whether a hybrid transaction for goods and services constituted the sale of a product that would support a product liability claim. *Id.* at 952–57. If a hybrid transaction primarily concerned a product, a cause of action for injury to property caused by the transaction was a product liability claim. *Id.* at 956–57. If the hybrid transaction primarily concerned a service, the resulting cause of action was not a product liability claim. *Id.* The Utah Supreme Court remanded the case for a determination of whether products or services predominated the transaction for the purchase and installation of the diesel generators. *Id.* at 956.

The Utah Supreme Court relied on a Delaware Supreme Court case, *Neilson Business Equipment Center, Inc. v. Monteleone*, 524 A.2d 1172 (Del. 1987), when it adopted the primary purpose test in *Wheeler*. *Id. Neilson*, in turn, cites an earlier Delaware case, *Glover School & Office Equipment Co. v. Dave Hall, Inc.*, 372 A.2d 221 (Del. Super. Ct. 1977). *Glover* held:

> Where a mixed contract is involved, it is necessary that the Court review the factual circumstances surrounding the negotiation, formation and contemplated performance of the contract to determine whether the contract is predominantly or primarily a contract for sale of goods or for services. *If the cause of action*

11

> *centers exclusively on the materials portion or the services portion of the contract, the determination may rest upon that fact.*

*Id.* at 223.

Relying upon *Glover* and a Tenth Circuit case that applied the UCC only to the portions of a contract that dealt with goods in a hybrid contract, *Foster v. Colorado Radio Corp.*, 381 F.2d 222, 226 (10th Cir. 1967), this court ruled in its prior order that if a plaintiff sues on a goods provision, the UCC applies. But if a plaintiff sues on a services provision of a hybrid contract, the UCC does not apply. Accordingly, the court found that the six-year general breach of contract statute of limitations applied to section 9.2 of the licensing agreement because it was a services provision and that the four-year UCC statute of limitations applied to section 13.1 because it was a goods provision. Because Southwest filed its complaint more than four years after it should have known about its breach of contract claims, the court dismissed Southwest's section 13.1 crossclaim. But since Southwest asserted its claims within the six-year statute of limitations, the court denied the motion to dismiss the section 9.2 crossclaim.

The Sekisui defendants now move for a judgment on the pleadings for the remaining section 9.2 crossclaim. They argue that this court erred when it determined that Utah law required it to apply the UCC statute of limitations to only part of the licensing agreement. The Sekisui defendants assert that Utah follows the one-law approach adopted by most courts, which requires the court to apply the UCC to the entire contract if it is predominately a contract for goods. They further contend that because the licensing agreement is predominately a contract for goods, the breach of contract crossclaim should be dismissed in its entirety.[4]

---

[4] Southwest asserts that the court should not consider the Sekisui defendants' argument because it is an unwarranted motion for reconsideration under Rule 59(e). *See Servants of Paraclete v. Does*,

2) One Law Approach vs. Gravamen Approach

Courts generally follow one of two main approaches to applying the UCC to hybrid contracts for goods and services. The majority of courts have adopted the one-law approach, which applies the UCC to the entire contract if it is predominately a contract for goods. If, on the other hand, the contract is primarily for services, the common law controls the contract. 1 COMMERCIAL LAW AND PRACTICE GUIDE ¶ 3.02[1][d][ii] (2019). Some courts, on the other hand, have applied the gravamen test, which permits a court to apply the UCC to disputes concerning a goods portion of a hybrid contract and the common law to disputes concerning a services portion of the contract. *Id.*; *Foster*, 381 F.2d at 226.

In its order on the Sekisui defendants' prior motion to dismiss, the court essentially applied the gravamen test. The Sekisui defendants now urge the court to change course and use the one-law approach to determine which statute of limitations should be applied to the entire contract. They cite a number of cases from other jurisdictions applying the one-law approach to hybrid contracts and argue that the court should likewise apply this rule here. Southwest asserts that the court correctly reasoned from *Baker* that it was more appropriate to apply the gravamen test.

The court agrees with the Sekisui defendants that it should have applied the one-law, predominant purpose test to determine the proper statute of limitations to apply to Southwest's breach of contract crossclaim. Both the *Wheeler* opinion and the language of the UCC statute of limitations suggest that Utah follows the one-law approach.

---

204 F.3d 1005, 1012 (10th Cir. 2000). But Rule 59(e) only applies to post-judgment motions. No judgment has been entered in this case. Prior to judgment, the court may revisit issues that it has previously ruled upon in earlier stages of the litigation. *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) ("[D]istrict courts generally remain free to reconsider their earlier interlocutory orders." (citation omitted)).

First, the *Wheeler* opinion indicates that the Utah Supreme Court would apply one statute of limitations to the licensing agreement at issue here. The *Wheeler* court addressed an analogous issue: whether to apply the product liability statute of limitations to the claim asserted by the city for damages caused by a diesel generator fire. 199 P.3d at 950–52. The Utah Supreme Court held that the predominant purpose test governed whether the city's claim was subject to the product liability statute of limitations or not. *Id.* at 952–57. On remand, the district court was required to decide whether the sale of the diesel generators or the installation and testing services predominated the transaction between the city and the contractor. *Id.* at 956. If the sale of products predominated, the product liability statute of limitations would apply to the city's entire cause of action. If the sale of services predominated, another statute of limitations would apply.

The Utah Supreme Court could have adopted a different rule in *Wheeler* that would have split the city's cause of action in two—applying the product liability statute of limitations to the extent that the city asserted that a defective product caused the fire and applying the general negligence statute of limitations to the extent that the city asserted that negligently rendered services caused the fire. Instead, that court held that a single statute of limitations should govern the cause of action depending on whether goods or services predominated the underlying transaction. Thus, although *Wheeler* applied the predominant purpose test in the context of a tort claim for either product liability or general negligence, that case indicates that the Utah Supreme Court would apply a similar one-law approach to determine the proper statute of limitations for a contract claim.

The language of Utah's UCC statute of limitations also supports the one-law approach. This statute provides: "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." UTAH CODE § 70A-2-725(1). The UCC defines a

14

"contract for sale," as a contract for the present or future sale of goods. *See id*. § 70A-2-106(1). Notably, the UCC statute of limitations focuses on the contract as a whole rather than upon individual provisions of a contract. It does not state that it applies to an action for breach of a sales clause of a contract; it applies to the entire contract so long as it is a contract for the sale of goods. When a contract contains both goods provisions and service provisions, the method for determining whether it is "contract for sale," within the meaning of the UCC, is the predominant purpose test. *See Wheeler*, 199 P.3d at 956–57.

The court, therefore, determines that Utah law requires the application of the predominant purpose test to determine whether the four-year UCC statute of limitations applies to all of Southwest's breach of contract crossclaim or whether the general six-year statute of limitations applies to the entire crossclaim.

> 3) Application of the Predominant Purpose Test in a Motion for Judgment on the Pleadings

The Sekisui defendants argue that the licensing contract is predominately for goods. But the court concludes that in this case, it may not resolve the predominant purpose test on a motion for judgment on the pleadings.

When applying the predominant purpose test, courts must "review the factual circumstances surrounding the negotiation, formation and contemplated performance of the contract to determine whether the contact is predominantly or primarily a contract for the sale of goods." *Wheeler*, 199 P.3d at 956 (quoting *Neilson*, 524 A.2d at 1174). Thus, under Utah law, courts must consider facts outside of the four corners of the contract to determine its primary purpose, including the circumstances of the contract's negotiation, formation, and performance. *Neilson*, the Supreme Court of Delaware case quoted by *Wheeler*, confirms that this test

incorporates questions of fact. The *Nielsen* court upheld a district court's "factual conclusion" that a hybrid contract was predominately for goods under a substantial evidence standard of review. 524 A.2d at 1173–74.

In resolving a motion for judgment on the pleadings, the court may consider only the well-pleaded facts of the complaint. But the allegations of Southwest's crosscomplaint do not paint a full picture of the formation and performance of the licensing agreement. Southwest alleges in its crosscomplaint: "The Sekisui License Agreement and agreements between Sekisui Americas/Sekisui Australia and Southwest were intended by the parties to be primarily an agreement for the pipeline restoration and renovation method, system, process and technology, construction services and pipeline renovation restoration [sic] and not primarily sale of a product." But aside from this summary allegation, there is little factual context concerning the negotiation and formation of the contract. Perhaps most importantly, neither the allegations of the crosscomplaint nor the contract documents provided to the court[5] state the full cost of the goods sold to Southwest or the full cost or value of the training services provided to it. Without this key information, the court cannot determine whether goods or services predominate at this stage of the proceedings.

4) Conclusion

Because the issue of whether the four-year UCC statute of limitations or the six-year general breach of contract statute of limitations cannot be resolved, the court denies judgment on

---

[5] The licensing agreement consists of five documents: (1) the Customer Specific Terms and Conditions, (2) the General Terms and Conditions for Sales and Delivery, (3) the Global Price List for Rehabilitation Materials, (4) the Charge List for Training and Technical Support, and (5) the Purchase Contract Proposal. The Sekisui defendants have only provided the first two documents to the court.

the pleadings as to Southwest's section 9.2 breach of contract crossclaim. Furthermore, because the court has reconsidered its application of the predominant purpose test, the court decides that it should not have dismissed Southwest's section 13.1 breach of contract crossclaim. The court reinstates this crossclaim and the parties may conduct discovery regarding the section 13.1 claim.

### B. *Indemnification*

Southwest also asserted a crossclaim for equitable indemnification against the Sekisui defendants. Under this crossclaim, it contends that any obligation that it may owe to Salt Lake City should be discharged by the Sekisui defendants.

"In actions for indemnity, courts universally require proof of three elements: (1) the payor (prospective indemnitee) must discharge a legal obligation the payor owes to a third person; (2) the prospective indemnitor must also be liable to the third person; and (3) as between the claimant payor and the prospective indemnitor, the obligation ought to be discharged by the indemnitor." *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 218 (Utah 1984). Southwest cannot satisfy the second element of the equitable indemnity test because the Sekisui defendants (the prospective indemnitors) are not liable to Salt Lake City (the third person). The court has dismissed all of Salt Lake City's claims against the Sekisui defendants on statute of limitations grounds, precluding any liability on the part of the prospective indemnitors. Thus, for the same reasons that the court dismisses Southwest's equitable indemnification crossclaim against HydraTech, the court grants judgment on the pleadings as to the indemnification crossclaim against the Sekisui defendants.

## CONCLUSION AND ORDER

The court orders as follows:

(1) The court GRANTS HydraTech's motion to dismiss Southwest's crossclaims against it. ECF No. 149. Dismissal is with prejudice.

(2) The court GRANTS IN PART and DENIES IN PART the Sekisui defendants' motion for judgment on the pleadings. ECF No. 152. The court grants judgment on the pleadings for Southwest's indemnification crossclaim. The court denies judgment on the pleadings for Southwest's breach of contract crossclaim for breach of section 9.2 of the licensing agreement. The court also reconsiders its prior order dismissing Southwest's breach of contract crossclaim for breach of section 13.1 of the licensing agreement. The court reinstates this crossclaim.

DATED August 26, 2020.

                BY THE COURT

                _____
                Jill N. Parrish
                United States District Court Judge